[No. 14100. Department Two. August 29, 1917.]

NOBLE D. JENKINS, *Appellant,* v. HAMILTON F. GRONEN *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—OFFICERS—APPOINTMENT—CIVIL SERVICE RULES—SELECTION. Tacoma city charter requires appointment under the civil service to be made from the list of eligibles according to their relative standing, in view of art. 14, § 181, giving the civil service board power to provide open, competitive examinations and requiring it to provide an eligible list from which vacancies may be filled for a probation period; § 182 providing that the board, in case of vacancy, certify three times the number of persons necessary to fill the vacancy, always certifying the persons having ·the highest standing; and § 184, providing the right of removal for unfitness.

SAME. Where a city ordinance provides for but one certification of eligibles under the civil service rules from which the appointment must be selected, and out of three certified but one candidate appeared, he alone can be appointed, and a second certification cannot be requested.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered March 6, 1917, dismissing an action for a writ of mandamus, upon overruling a demurrer to the answer. Reversed.

*Stiles & Latcham,* for appellant.

*U. E. Harmon* and *Frank M. Carnahan,* for respondents.

[1]Reported in 167 Pac. 916.

FULLERTON, J.—Section 10, of article 2, of the charter of the city of Tacoma classifies the persons in the service of the city in the following manner:

"Class A. Elective officers, embracing a mayor, four councilmen and controller, each of whom shall be elected at large by the qualified electors of the city.

"Class B. Appointive officers, embracing city clerk, city attorney, city engineer, chief of police, a fire chief, and such other chiefs or superintendents of departments as the council shall, by ordinance passed in the manner provided in this charter, create or establish.

"Class C. Clerks and assistants, embracing all persons employed in a clerical capacity or as assistants to officers.

"Class D. Employees, embracing all other persons in the service of the city not otherwise classified."

Section 29 of the same article contains the following provision:

"All appointive officers and employees of the city shall be selected or appointed with reference to their qualifications and fitness, and for the good of the public service."

Article 14 creates a civil service board and defines its duties. By § 181 the board is given power, among other things, to classify the employees of the city and to provide for open, competitive, and free examination as to fitness of those seeking employment of the city, and to this end is required to provide an eligible list from which vacancies may be filled for a period of probation for employees before employment is made permanent, and for promotion of employees on the basis of merit, experience, and record. Section 182 provides:

"Should a vacancy or vacancies occur in any position subject to the recommendation of the board, said board shall as soon as possible certify, to the commissioner of the department in which such vacancy or vacancies exist, three times the number of persons necessary to fill said vacancy or vacancies; provided, that said board shall always certify the persons having the highest standing on the eligible list for the posi-

tions they seek to fill; and provided, further, that a less number may be certified when there is not the required number on the eligible list. All persons not appointed shall be restored to their relative positions on the eligible list. All persons who have been on the eligible list for two years without appointment shall be removed therefrom."

Section 183 provides:

"The provisions of this article shall apply to all appointive officers and employees of the city, except those especially named in section 10, article 11, Class A and Class B, of this charter, and except commissioners of any kind, laborers whose occupation requires no special skill or fitness, election officials, mayor's secretary and assistant city attorneys:"

Section 184 provides:

"All persons subject to civil service examination shall be subject to removal from office or employment by the commissioner in whose department they are employed, for misconduct or failure to perform their duties under such rules and regulations as he may adopt. . . ."

To supplement and aid in carrying into effect the provisions of the charter, the city enacted an ordinance (No. 4342), § 7 of which, as amended by a subsequent ordinance (No. 5541) reads as follows:

"The head of the department or office in which any classified position is to be filled shall notify the civil service board of the vacancy, and upon the receipt of a certified list of eligibles from the board, he shall fill the vacancy by appointment from the persons certified to him; and the appointee shall be on probation for a period of thirty days. The appointing officer may require the persons certified to come before him and shall be entitled to inspect such persons' examination papers."

On December 23, 1916, a vacancy occurred in the position of gate tender at the city power plant, the control of which plant was vested in the commissioner of the light and water department. The respondent Gronen was then commissioner of that department, and requested the civil service board to certify for appointment from its eligible lists candidates for

the position.   There were five persons on the board's eligible list for the position of gate tender, and three were certified in the order of their standing.   Of the three certified, only the appellant Jenkins, who ranked third on the list, appeared. The commissioner failed to appoint Jenkins, and, after waiting five days, requested the civil service board to certify two additional names.   The board complied, certifying two names, which included that of the respondent Percival, who ranked fourth on the list.   From the list, the commissioner selected Percival.   Jenkins thereupon began a proceeding in mandate in the superior court to oust the respondent from the position and compel the appointment of himself.   The court denied the writ, and from the judgment entered, this appeal is prosecuted.

It is the appellant's contention that it was the duty of the commissioner to select for appointment one of the three eligibles first certified to him by the civil service board, and that, inasmuch as two of them did not appear, he became entitled to the appointment as a matter of right.   On the other hand, the respondents contend that the commissioner has the right of selection from three eligible persons, if there be that many on the eligible list, and that when two of the three first selected do not appear, he has the right to have others certified so that he may not be denied his right of choice.

There are cases which maintain the principle that an officer upon whom the fundamental law confers the power of appointing subordinate officials and employees cannot be deprived of his privilege by civil service rules and regulations which unduly restrict him in his right of choice; others, again, hold that the right is not unduly restricted where the appointing officer has the choice of selection between as few as three eligibles.   *People ex rel. Balcom v. Mosher*, 163 N. Y. 32, 57 N. E. 88, 79 Am. Rep. 552; *People ex rel. Qua v. Gaffney*, 142 App. Div. 122, 126 N. Y. Supp. 1027; *People ex rel. McClelland v. Roberts*, 148 N. Y. 360, 42 N. E. 1082,

31 L. R. A. 399; *State ex rel. Buell v. Frear*, 146 Wis. 291,
131 N. W. 832, 34 L. R. A. (N. S.) 480.

But the reasoning of these cases, finding its basis as it
does in constitutional and statutory grants of power, is not
pertinent to, and has no bearing upon, the situation here pre-
sented. By the constitution of this state, the city of Ta-
coma, as a city of the first class, has the power to frame and
adopt its own charter. The charter when adopted, and the
ordinances lawfully enacted thereunder, thus become in them-
selves the fundamental law and must be given consideration
as written, however much they may restrict the powers of
the immediate appointive officers. The question, then, is the
meaning of the charter and ordinance provisions above set
forth.

In determining the meaning of these charter provisions,
we have not been able to agree with the contentions of either
party. It will be observed that free, open, and competitive
examinations are provided for; that the persons having the
highest standings on the eligible list shall be first certified,
and that they shall be certified in the order of their standings,
the highest on the list first; that a person certified and not
chosen shall be restored to his relative position on the eligible
list; that no second certification is provided for, and that a
less number than three may be certified if there be not three
on the eligible list; and that the appointive officer is not
given, in express terms, a right of choice from the number of
eligibles that may be certified. These provisions make it
plain, we think, that the charter requires appointments to
be made from the list of eligibles according to their relative
standings, and that it is the duty of the appointive officer to
tender the position first to the person who stands highest
on the list, and to the others in turn only after the first has
failed to appear on notification, or has otherwise indicated
that he does not desire the appointment. The only provision
that militates against this conclusion is the requirement that
thrice the number of candidates be certified that there are

vacancies to be filled, but we think this requirement was intended rather to secure the appearance of a candidate than to give the appointive officer a right of choice. The evident purpose of the framers of the charter were to make free and open the opportunity to enter the public service, and to secure from the persons applying those shown by tests to be best qualified for the service. These purposes are not accomplished if anything is left to the whim or caprice of the appointive power. There is no danger from this construction of the charter of forcing upon the service negligent or incompetent employees. This is carefully guarded against in the charter itself. It is provided that appointive officers and employees shall first be subjected to a probationary term, and power is given to the commissioner in charge to remove an officer or employee, after his term becomes permanent, who is guilty of misconduct or fails to perform his duties.

It may be that the section of the ordinance quoted gives a somewhat different interpretation of the charter from the interpretation we have concluded should be given to it. In part, the ordinance is a manifest departure from the charter. But in so far as it can be said to be pertinent thereto, it does not aid the respondents. It requires but one certification, and provides that the appointive officer "shall fill the vacancy by appointment from the persons certified to him." Under this, when three are certified and but one consents to take the position, it is the plain duty of the officer to appoint that one.

It is our opinion that the trial court erred in its conclusions. The judgment is therefore reversed, and the cause remanded with instructions to grant the writ.

MOUNT, HOLCOMB, and PARKER, JJ., concur.

ELLIS, C. J. (concurring)—It seems to me that the charter intends that the appointment shall be made from the three

first certified, and that the appointing officer may select and appoint any one of those appearing on that certification. It does not, however, contemplate two certifications, unless none appear. Since appellant alone appeared, he alone could be appointed. I therefore concur in the result reached by the majority.