[No. 2594–2. Division Two. February 8, 1978.]

FLOYD D. GREEN, ET AL, *Respondents,* v. COWLITZ
COUNTY CIVIL SERVICE COMMISSION, ET AL,
*Appellants.*

*Henry Dunn, Prosecuting Attorney,* for appellants.

*Don L. McCulloch* and *Clifford R. Kuhn,* for respondents.

REED, A.C.J.—The Cowlitz County Sheriff's Civil Service Commission (hereafter Commission), appeals from a superior court decree which declared invalid the results of an examination given to create an eligibility list for the classified position of deputy sheriff for Cowlitz County. We reverse.

Petitioners below were among the 80 to 100 individuals seeking to qualify by written examination for an eligibility list for the classified position of deputy sheriff. The examination, given under the auspices of the Commission, by its chief examiner, Dr. Coffey, was offered to two different groups in separate rooms at the same time and to one group at a later time. Petitioners failed the examination and appealed to the Commission, alleging the test was improperly and unfairly administered because (1) the Commission failed to comply with its own rules and regulations detailing the method of holding examinations; (2) the test was not practical, in that it was not designed to determine the capabilities of an applicant to perform the duties of deputy sheriff, and (3) the chief examiner gave conflicting and ambiguous instructions concerning the time allowed for completing the examination.

The Commission heard evidence and found against petitioners on all issues. Petitioners then secured a writ of certiorari from the Superior Court which, after a hearing, upheld the Commission on all but the issue of the examination instructions. The Commission appeals from the trial court's determination that Dr. Coffey's instructions were ambiguous and that the Commission's decision was therefore "clearly erroneous." Petitioners did not cross–appeal from the decision on their other claims.

On appeal, we are first met with the Commission's contention that the Superior Court lacked jurisdiction to review the Commission's determination because (1) the Commission was not performing a judicial function so as to be reviewable under RCW 7.16.040,[1] and (2) petitioners did not allege the violation of any fundamental right which would invoke the court's inherent or constitutional[2] powers of review. There is no statutory right of appeal and the Commission's rules provide that its decision on appeals by dissatisfied examinees shall be final and conclusive.

■ ■ We agree with the Commission's first contention that it was not performing a judicial function when it heard petitioners' appeal of the examination results. Several tests have been employed to determine whether an administrative agency is performing a judicial function or whether it is engaged in purely administrative activities. *See Citizens Against Mandatory Bussing v. Palmason*, 80 Wn.2d 445, 495 P.2d 657, 50 A.L.R.3d 1076 (1972) and *Okanogan County School Dist. 400 v. Andrews*, 58 Wn.2d 371, 363 P.2d 129 (1961). The correct test to be applied in this case

---

[1]RCW 7.16.040 provides:

"A writ of review shall be granted by any court, except a police or justice court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law."

[2]Const. art. 4, § 6.

is whether or not the Commission was performing a function which the courts have historically performed and which the courts had in fact performed prior to creation of the Commission. *State ex rel. Hood v. State Personnel Bd.,* 82 Wn.2d 396, 400, 511 P.2d 52 (1973); *Floyd v. Department of Labor & Indus.,* 44 Wn.2d 560, 269 P.2d 563 (1954). In order to apply this test we must first examine the history and purpose of the Sheriffs' Civil Service Commissions; these agencies came into being with the passage of RCW 41.14, enacted by Laws of 1959, ch. 1 (Initiative 23). The Commission's functions are therein defined as follows:

> The general purpose of this chapter is to establish a merit system of employment for county deputy sheriffs and other employees of the office of county sheriff, thereby raising the standards and efficiency of such offices and law enforcement in general.

RCW 41.14.010. The Commission's duties and powers are set forth in RCW 41.14.060, which provides in part as follows:

> It shall be the duty of the civil service commission:
> (1) To make suitable rules and regulations not inconsistent with the provisions hereof. Such rules and regulations shall provide in detail the manner in which examinations may be held, . . .
> (2) To give practical tests which shall consist only of subjects which will fairly determine the capacity of persons examined to perform duties of the position to which appointment is to be made.
> . . .
> (6) To provide for, formulate, and hold competitive tests to determine the relative qualifications of persons who seek employment in any class or position and as a result thereof establish eligible lists for the various classes of positions, . . .

Prior to creation of the Commission, deputy sheriffs and other employees of the sheriff's office and applicants for those positions had no judicially protected rights. In the absence of a special statutory preference, such as that for veterans, the county sheriff had exclusive say and unbridled discretion in personnel matters and could hire, classify,

promote, demote and discharge his appointees as he saw fit and without fear of challenge. *Cf. State ex rel. Ford v. King County,* 47 Wn.2d 911, 290 P.2d 465 (1955). Thus, there were no functions which the courts had or could have performed prior to creation of the Commission and the very act which created the Commission also created the rights which were to be protected by the agency. *State ex rel. Hood v. State Personnel Bd., supra; see also Gogerty v. Department of Institutions,* 71 Wn.2d 1, 426 P.2d 476 (1967).

We conclude therefore that the function of the Commission in hearing and determining appeals from the results of an examination given to establish an eligibility list for the position of deputy sheriff, is nonjudicial in nature. Consequently, the Commission's determinations in this area are not subject to review pursuant to RCW 7.16.040. *Reiger v. Seattle,* 57 Wn.2d 651, 653, 359 P.2d 151 (1961); *In re Harmon,* 52 Wn.2d 118, 120, 323 P.2d 653 (1958).

Petitioners cite us to our recent decision of *Vance v. Seattle,* 18 Wn. App. 418, 569 P.2d 1194 (1977), wherein we liken the functions of the Seattle Civil Service Commission to that of an inferior judicial tribunal, and where we said its actions sustaining dismissal of a parks department employee were judicial in nature and reviewable by statutory writ of certiorari. Our decision in *Vance,* however, cannot be taken as authority for establishing guidelines in determining whether or not an administrative agency is performing a judicial as opposed to a purely administrative function. In *Vance,* our concern was not with *whether* decisions from the Seattle Civil Service Commission are subject to review, because that was conceded by the city; rather, our concern was with the proper mode of review and the time within which that review must be sought. It is true that in *Vance* we adverted to RCW 7.16.040, but we also cited certain of our State Supreme Court's decisions wherein review was undertaken pursuant to the court's inherent powers. If *Vance* did in fact muddy the waters in this area, we hasten now to state that the form in which the

administrative body assembles itself for a hearing and the fact that it takes testimony and resolves disputed questions of fact and enters findings and conclusions, do not per se make its functions judicial or quasi–judicial rather than administrative.

The Commission next contends that, because petitioners were not public employees with vested rights under civil service, and because there is no fundamental right to public employment, the Superior Court was powerless to invoke its inherent powers under the constitution to review the Commission's determinations even for illegal or manifestly arbitrary and capricious actions. *Citizens Against Mandatory Bussing v. Palmason, supra; State ex rel. Dupont–Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 793, 384 P.2d 608 (1963); *Pettit v. Board of Tax Appeals,* 85 Wn.2d 646, 538 P.2d 501 (1975); *State ex rel. Hood v. State Personnel Bd., supra.*

■ We do not agree with this contention, as will be explained hereafter, but we should first discuss the term "fundamental right" as we think it is used in the context of a judicial review of agency action. We have yet to find a precise definition in the Washington decisions addressing the review problem, but we are convinced it need not be a right stemming directly or indirectly from a constitutional provision. In *State ex rel. Dupont–Fort Lewis School Dist. 7 v. Bruno, supra,* the court, speaking through Justice Hamilton, has given us a rather broad definition when it states at page 794:

> The essential touchstone, impelling invocation of the inherent or constitutional power of judicial review of nonjudicial administrative action, is the basic nature and extent or magnitude of the right involved coupled with the patency and character of the alleged violation.

In *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974), a fundamental right was found in the policy underlying the State Environmental Policy Act of 1971, RCW 43.21C, *i.e.,* a right to a "healthful environment." In *Tacoma v. Civil Serv. Bd.,* 10

Wn. App. 249, 518 P.2d 249 (1973), this court recognized the existence of a fundamental right of a public employee to enforce, by judicial fiat if necessary, those portions of the Civil Service Act which affect him. No violation of such a right was found in that case, however.

We conclude, therefore, that we need attempt no finer definition of the term "fundamental right" and that, guided by Justice Hamilton's approach in *Dupont,* a reviewing court must examine all the facts and circumstances of each case in order to determine if the right alleged to have been violated is indeed fundamental.

Assuming arguendo that there is no fundamental or legally protected right to public employment in the abstract, *McAuliffe v. Mayor of New Bedford,* 155 Mass. 216, 220, 29 N.E. 517 (1892) (Holmes, J.), we think a fundamental right can be found in the statutes creating the civil service system here in question and in the Commission's own rules. First, there is the declaration of purpose, to which we have already alluded, contained in RCW 41.14.010; second, RCW 41.14.060 imposes upon the Commission the duty to make rules which shall "provide in detail the manner in which examinations may be held,"; third, RCW 41.14.060(2) mandates the Commission "[t]o give practical tests . . . which will fairly determine the capacity of persons examined to perform duties of the position to which appointment is to be made" and fourth, RCW 41.14.060(6) requires the Commission to formulate and hold competitive examinations to determine the qualifications of persons seeking employment in any class or position and from that list to establish eligibility lists for the various classified positions. In addition, the Commission's own Rule VI, § 1, requires:

> All examinations shall be impartial and shall relate to those matters which test fairly the capacity and fitness of the candidate to discharge efficiently the duties of the position to be filled. . . .

The legislative concern that the act be fairly and equally administered to all who qualify by citizenship and

by being conversant with the English language (RCW 41.14.100), is evidenced by RCW 41.14.180, which provides *inter alia* as follows:

> No commissioner or any other person, shall, by himself or in cooperation with others, defeat, deceive, or *obstruct any person in respect of his right of examination* or registration according to the rules and regulations, or falsely mark, grade, estimate, or report upon the examination or proper standing of any person examined, registered, or certified pursuant to this chapter, . . .

(Italics ours.) It is thus clear that the legislature intended to clothe individuals seeking classified positions in the sheriff's department with a fundamental right to fairly compete and be fairly considered for that employment. Such a right would be hollow and meaningless indeed if it did not carry with it the right to insist that all applicants (1) be given the same examination, (2) receive the same definite instructions for completion of the examination, and (3) be extended the same time to complete the examination. In short then, we find in this case a fundamental right of individuals seeking employment under the civil service structure to procedural due process and an equal opportunity to enter public service on the basis of fairly administered competitive examinations. This will insure, as the legislature intended, that nothing is left to the whim or caprice of the appointing power. *State ex rel. Hearty v. Mullin,* 198 Wash. 99, 87 P.2d 280 (1939); *cf. Jenkins v. Gronen,* 98 Wash. 128, 167 P. 916 (1917).

Because petitioners alleged a violation of their fundamental right to compete for the eligibility test on an equal basis with all other applicants, the Superior Court acted within its powers in assuming jurisdiction by writ of certiorari to review the Commission's determination, even though the Commission was performing a purely administrative function.

█ The problem is not solved at this juncture, however, because the parties are in disagreement over the standard of review which was applied by the trial court in this

instance. Petitioners contend the trial judge correctly employed the "clearly erroneous" standard of review, whereas the Commission argues the court should have utilized the "arbitrary and capricious" yardstick:

> Under the more rigorous [from the agency standpoint] "clearly erroneous" standard agency action may be reversed where the reviewing court is firmly convinced that a mistake has been committed, even though there is evidence supporting the action.

*Hayes v. Yount,* 87 Wn.2d 280, 286, 552 P.2d 1038 (1976). Again, we agree with the Commission. The "clearly erroneous" standard for review of administrative decisions is found in the administrative procedures act, RCW 34.04, and is ordinarily applicable only to the actions of state agencies.[3] It does not, therefore, govern judicial review of the administration action of a purely local county agency such as the Commission. *Cf. Riggins v. Housing Authority,* 87 Wn.2d 97, 549 P.2d 480 (1976). The rule, rather, is as enunciated in *Reiger v. Seattle, supra,* where the court said at page 653:

> [T]he judiciary will only review the [essentially administrative] actions of an administrative agency to determine if its conclusions may be said to be, *as a matter of law,* arbitrary, capricious, or contrary to law.

Neither we nor the trial judge may apply the clearly erroneous standard in this case by reviewing the findings and conclusions of the Commission.

 Finally then, this court must determine if the Commission's action was in fact arbitrary, capricious or contrary to law. We therefore start with the proposition that the Commission's findings on conflicting evidence will be accepted as verities. *State ex rel. Cosmopolis Consol.*

---

[3]Petitioners' reliance upon *Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 552 P.2d 674 (1976) is misplaced. In *Norway Hill* the court applied both the "clearly erroneous" and "arbitrary and capricious" standards to a county's "negative threshold determination" only because of public policy considerations under the State Environmental Policy Act of 1971. We do not read that decision as either dictating or countenancing a departure from the usual standard in cases such as that before us.

*School Dist. 99 v. Bruno,* 59 Wn.2d 366, 367 P.2d 995 (1962). Those findings are that Dr. Coffey gave identical instructions to each group of examinees, *i.e.,* that "everyone would have plenty of time to complete the examination, but that it should be possible to complete it within one hour." The Commission also found that others taking the exam worked beyond the 1–hour period and no petitioner requested additional time. For these reasons the Commission concluded that petitioners were not prejudiced in any way by Dr. Coffey's failure to establish a definite time limit in terms of minutes or hours.

Under the circumstances, we have to agree that it would have been better if the Commission, pursuant to the statutes and its own rules, had fixed a definite time limit for the examination, or better yet, had Dr. Coffey or the written instructions themselves been more specific. In short, we are left with the impression that, by leaving the matter to Dr. Coffey's judgment, the Commission left room for just the type of complaint made by petitioners and the resultant lawsuit.

We cannot say as a matter of law, however, that petitioners were deprived of their fundamental right to a fair and impartial competitive examination. As the Commission found, all those taking the exam were given the identical instruction that they would have plenty of time for its completion. Dr. Coffey's gratuitous opinion (he had not actually taken the exam himself and appears not to have been experienced in law enforcement, being a schoolteacher by trade), that it ought to take only an hour, may be regarded as surplusage since he had announced there was no time limit.

In conclusion, while this court believes that the Commission's examination procedure will be much improved and litigation avoided if *inter alia,* definite time limits are established for the administration of such examinations, we cannot say the Commission acted arbitrarily and capriciously. That is to say, we cannot say there is no support in the record for its action, which renders it "wilful and

220

unreasoning action, in disregard of facts and circumstances." *Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n,* 69 Wn.2d 472, 479, 418 P.2d 735 (1966). On the contrary, the Commission, after considering the conflicting evidence, made specific factual findings and, in light of those facts and all the circumstances, found that petitioners should not have been misled into thinking they had only 1 hour to complete the examination. We will not substitute our judgment for that of the Commission. *Hayes v. Yount, supra.*

The judgment of the trial court vitiating the examination results is reversed and the decision of the Commission is affirmed.

PETRIE, J., and WORSWICK, J. Pro Tem., concur.