[No. 9689–3–I.   Division One.   November 22, 1982.]

NICHOLAS J. FEZZEY, *Appellant,* v. ROBERT DODGE, ET AL, *Respondents.*

*George William Cody,* for appellant.

*Vern Harkins,* for respondents.

RINGOLD, J.—Nicholas J. Fezzey, an applicant for the position of custodial officer, brought an action against Snohomish County, the Snohomish County Sheriff, the Undersheriff and the State of Washington for wrongful denial of employment, seeking a writ of mandamus and damages. The trial court granted the County's motion for summary judgment. Fezzey appeals from the summary judgment and dismissal of his action. Finding genuine issues of fact present, we reverse.

As is required upon review of a summary judgment dismissal, *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963), we view the proffered evidence and reasonable inferences most favorably to the nonmoving party, Fezzey.

Fezzey applied for employment as a custodial officer with the Snohomish County Sheriff's Department (the Department) on April 29, 1978. On his employment application he answered "no" to the question of whether he had ever been convicted of a nontraffic offense, despite his Montana conviction for abduction in 1965. After having successfully completed written and physical examinations, Fezzey was placed on an eligibility list for that position. Fezzey's name was then certified to the Sheriff's Department on May 25, 1978.

Shortly after submitting his application, Fezzey disclosed his felony conviction to one of the three county civil service commissioners. The Sheriff's Department subsequently informed Fezzey that this conviction precluded him from legally carrying a firearm and therefore from being hired as a custodial officer unless he had the impediment removed. Fezzey stated in his deposition that department personnel promised to hire him only if he obtained a pardon.

During its regular meeting on July 6, 1978, the Snohomish County Civil Service Commission (the Commission) reviewed Fezzey's situation and resolved to place his name on a special eligibility list pending removal of the disability. Fezzey stated in his deposition that Deputy Prosecuting Attorney Richard Lowry informed him that the Commission had imposed no expiration date on his eligibility, but that the lists were usually valid for no more than 1 year. A copy of the minutes from the Commission meeting, however, indicates that the Commission may have voted to hold Fezzey's name on the eligibility list for only 4 months.

His eligibility extended, Fezzey then set out to obtain both a pardon from the Governor of Montana and a firearms disability clearance from the United States Bureau of Alcohol, Tobacco and Firearms. He was granted the pardon on March 13, 1979, but was denied the firearms clearance. He brought suit to compel relief from the disability in federal court; the court dismissed his action on March 21, 1980. Fezzey presented the sheriff's office with his pardon on March 22, 1979, but was denied employment.

Fezzey brought suit for wrongful denial of employment on March 27, 1979, against Sheriff Robert Dodge, Undersheriff Douglas Engelbretson, Snohomish County, and the State of Washington. The relief sought was a writ of mandamus directing defendants to appoint him to the position, as well as a monetary award of damages, attorney's fees, and costs. The trial court granted the defendants' motion for summary judgment and entered an order of dismissal October 6, 1980.

### FAILURE TO FILE CLAIM

The first issue presented is whether Fezzey's claim is barred by his failure to file his claim first with the county board of commissioners before bringing suit in superior court. The County relies on RCW 36.45.030, providing: "No action shall be maintained on any claim for damages until it has been presented to the board of county commissioners". The County also points to *Campbell v. Thunderbird*

*Trucking & Constr., Inc.,* 30 Wn. App. 496, 636 P.2d 494 (1981), where the court upheld the constitutionality of the claim filing requirement of RCW 36.45.030.

The Supreme Court recently reviewed RCW 36.45.030 and *Campbell.* In *Hall v. Niemer,* 97 Wn.2d 574, 649 P.2d 98 (1982), the court held that the claim filing provision of RCW 36.45.030 was not severable from its unconstitutional 120–day limitation provision. Accordingly, the court invalidated that statute in its entirety, and reversed *Campbell.* We are bound by *Hall* and its invalidation of RCW 36.45-.030. Fezzey was entitled to bring suit directly in superior court without first filing a claim with Snohomish County.

### EFFECT OF FEZZEY'S FALSE ANSWER

The next question we consider is whether Fezzey's false answer on his employment application justified the Sheriff's Department in refusing to hire him. In order to answer this, we turn to civil service law and examine the policies and directives of the sheriff's office civil service statute and the Commission's own rules and regulations.

■ Enacted by Laws of 1959, ch. 1 (Initiative 23), the sheriff's office civil service statute was designed for the express purpose of establishing a merit–based personnel system.

> Declaration of purpose. The general purpose of this chapter is to establish a merit system of employment for county deputy sheriffs and other employees of the office of county sheriff, thereby raising the standards and efficiency of such offices and law enforcement in general.

RCW 41.14.010. This statute affords applicants the fundamental right to fair competition and fair consideration for employment opportunities. *Green v. Cowlitz Cy. Civil Serv. Comm'n,* 19 Wn. App. 210, 217, 577 P.2d 141 (1978). Implicit in the statutory scheme is the legislative intent to circumscribe the county sheriff's previously unbridled discretion in personnel matters. *Green,* at 213.

The statute divides authority between the Commission and the Sheriff's Department. The Commission's various

duties are set out in RCW 41.14.060. The statute as it existed in 1978 when Fezzey's application was being processed required the Commission to certify to the sheriff but one name, that of the highest ranked examinee.[1] Former RCW 41.14.060(7) (amended 1979) provided in part:

It shall be the duty of the civil service commission:

. . .

(7) To certify to the appointing authority, when a vacant position is to be filled, on written request, the name of the person highest on the eligible list for the class.

The Sheriff's Department has duties under the statute complementary to those of the Commission. The sheriff's hiring duties during the pertinent period of May 1978 to March 1979 were outlined in RCW 41.14.130 (amended 1979):[2]

Whenever a position in the classified service becomes vacant, the appointing power, if it desires to fill the vacancy, shall requisition the commission for the name and address of a person eligible for appointment thereto. The commission shall certify the name of the person highest on the eligible list for the class to which the vacant position has been allocated, who is willing to accept employment. If there is no appropriate eligible list for the class, the commission shall certify the name of the person standing highest on the list held appropriate for such class. If more than one vacancy is to be filled an additional name shall be certified for each additional

---

[1]The statute was amended in September 1979 to give the sheriff a greater choice in appointing successful examinees. It now requires the Commission to "certify to the appointing authority . . . the names of the three persons highest on the eligible list for the class." RCW 41.14.060(7). The earlier version of the statute is the one pertinent to this appeal. The Commission acted on Fezzey's application in May 1978. The amendment requiring commission certification of three names rather than of one did not become effective until September 1979, 6 months after Fezzey filed his complaint.

[2]Under the 1979 amended version requiring commission certification to the sheriff of three rather than of only one name, the sheriff "shall forthwith appoint *a* person from those certified to the vacant position." (Italics ours.) RCW 41.14-.130. This amendment also was not effective until September 1979, 6 months after Fezzey had filed his complaint.

vacancy. *The appointing power shall forthwith appoint such person to the vacant position.*

To enable the appointing power to exercise a choice in the filling of positions, no appointment, employment, or promotion in any position in the classified service shall be deemed complete until after the expiration of a period of one year's probationary service, as may be provided in the rules of the civil service commission, during which the appointing power may terminate the employment of the person certified to him, if during the performance test thus afforded, upon observation or consideration of the performance of duty, the appointing power deems him unfit or unsatisfactory for service in the office of county sheriff. Thereupon the appointing power shall designate the person certified as standing next highest on any such list and such person shall likewise enter upon said duties for the probationary period, until some person is found who is deemed fit for appointment, employment, or promotion whereupon the appointment, employment, or promotion shall be deemed complete.

(Italics ours.)

The statute also empowers the Commission to promulgate rules and regulations to aid in administering the system. RCW 41.14.060(1) authorizes the Commission:

To make suitable rules and regulations not inconsistent with the provisions hereof. Such rules and regulations . . . may also provide for any other matters connected with the general subject of personnel administration, and which may be considered desirable to further carry out the general purposes of this chapter, or which may be found to be in the interest of good personnel administration.

The Commission adopted the Rules and Regulations of the Snohomish County Civil Service Commission pursuant to this statutory authorization. The pertinent rules provide:

*Section 5.6 Rejection of Application:* The Chief Examiner shall reject any application or applicant from appointment, promotion or reemployment for any of the following:

. . .

B. The applicant has made a false statement in his application with regard to any material fact.

*Section 7.3 Removal from Employment List:* The chief examiner may at any time remove the name of an eligible person from an eligibility list for any one or more of the following causes.

. . .

E. For attempted deception, fraud or other impropriety in connection with any application or test.

██ The civil service statute and commission rules adopted thereunder do not furnish the sheriff with authority to reject a certified applicant for having falsified his employment application. The civil service rules reserve that right to the Commission. Once the Commission certifies an examinee to the sheriff, under the statute he "shall appoint" that person. RCW 41.14.130 (amended 1979). Sheriff Dodge acknowledged this statutory division of authority in his deposition, stating that only the Commission had the authority to disqualify Fezzey for his misrepresentation. The civil service rules do allow the sheriff to later discipline or even terminate an employee for false statements made as an applicant. Rules and Regulations of the Snohomish County Civil Service Commission 12.1(1). Neither the civil service rules nor the civil service statute, however, empowers him to use the false statement as a basis for a refusal to hire.

### Effect of Failure To Secure a Federal Firearms Disability Clearance

Fezzey apparently concedes that the ability to legally carry a firearm is an eligibility requirement for the position of custodial officer. Fezzey contends, however, that his gubernatorial pardon removed any firearms disability and that the Department's refusal to hire him unless he obtained federal relief was therefore wrongful.

Snohomish County civil service rule 5.4 provides that examinees must meet the qualifications called for in the job announcement to be eligible for examination. The Commission's job announcement states that the duties of a custodial officer include "the care, custody and transportation of prisoners for the Sheriff's Department." Assuming this

announcement impliedly requires the ability to legally carry a firearm for eligibility, we look to federal law to determine whether Fezzey needed federal firearms disability relief in addition to his gubernatorial pardon.

Two federal statutory provisions relate to this question. The first, 18 U.S.C. app. §§ 1201 *et seq.*, was intended to regulate the receipt, possession, or transportation of firearms by persons deemed to present special dangers to public safety. *United States v. Matassini,* 565 F.2d 1297, 1299 (5th Cir. 1978). 18 U.S.C. app. § 1202(a) imposes criminal liability on convicted felons who carry firearms. Having been convicted of the felony of abduction in Montana, Fezzey falls within this statutory proscription, unless exempt. 18 U.S.C. app. § 1203, however, exempts from liability "(2) any person who has been pardoned by . . . the chief executive of the State and has expressly been authorized by the . . . chief executive . . . to receive, possess, or transport in commerce a firearm." Fezzey's pardon authorizes him to carry a weapon, thereby affording him the benefit of the 18 U.S.C. app. § 1203 exception.

The second statutory provision, 18 U.S.C. §§ 921 *et seq.*, is primarily concerned with federal licensure of persons in the firearms business. *Matassini,* at 1299. Under section 922(h)(1) any person convicted of a crime punishable by imprisonment for a term exceeding 1 year is prohibited from receiving firearms. Fezzey's abduction conviction placed him within this prohibition. Under 18 U.S.C. § 925(c) the Secretary of the Treasury may grant relief from the disability imposed by section 922(h)(1) so long as the underlying conviction did not involve use of a firearm. Fezzey's application for relief under this section was correctly denied because his conviction involved use of a firearm.[3] 18

---

[3]In its order dismissing Fezzey's action over the denial of firearms disability relief, the federal district court stated that Fezzey's pardon exempts him from criminal liability under both 18 U.S.C. app. § 1202(a) and 18 U.S.C. § 922(h): "The gubernatorial pardon allows plaintiff to receive or possess a firearm free from the fear of prosecution under Title IV or Title VII; . . . If the Snohomish County Sheriff's Department wants assurance that plaintiff can lawfully possess a

U.S.C. § 925(a)(1), however, appears to exempt Fezzey from the proscriptions contained in section 922(h)(1), obviating any need for him to seek formal relief from the federal agency. It provides: "The provisions of this chapter shall not apply with respect to the . . . receipt . . . of any firearm . . . for the use of . . . any State or any department, agency, or political subdivision thereof." 18 U.S.C. § 925(a)(1).

In *Hyland v. Fukuda,* 580 F.2d 977 (9th Cir. 1978), a case involving similar facts, the Ninth Circuit held that 18 U.S.C. § 925(a)(1) exempted a state prison guard applicant with a conviction for a felony involving a firearm from any criminal liability imposed by 18 U.S.C. § 922(h):

> It is undisputed that any firearm Hyland might be permitted to carry . . . would be owned by, and used exclusively for, the state. . . . the plain terms of section 925(a)(1) remove firearms owned by the state and used exclusively for its purposes from the limitations of section 922. We therefore reject the Department's assertion that section 922 justifies its refusal to consider Hyland's application for employment . . .

*Hyland,* at 979. *Accord, United States v. Kozerski,* 518 F. Supp. 1082 (D.N.H. 1981).[4]

Fezzey's use of a weapon while performing his duties as a custodial officer would appear to be on behalf of the County, a political subdivision of the State. If this is so found at trial the section 925(a)(1) exception would apply,

---

firearm, it now has that assurance." In so stating, the federal trial court followed the reasoning in *United States v. Matassini,* 565 F.2d 1297 (5th Cir. 1978), that a pardon removes criminal liability under both 18 U.S.C. app. § 1202(a) and 18 U.S.C. § 922(h), apparently rejecting the contrary holding in *Thrall v. Wolfe,* 503 F.2d 313 (7th Cir. 1974).

[4]Fezzey attaches to his brief an additional order entered by the federal court after having dismissed his complaint. In that order the court opined that 18 U.S.C. § 925(a)(1), as interpreted by the Ninth Circuit in *Hyland v. Fukuda,* 580 F.2d 977 (9th Cir. 1978), may exempt Fezzey from the proscriptions of 18 U.S.C. § 922(h): "If Fezzey falls within the § 925(a)(1) exception, he need not seek relief from firearms disability under § 925(c)."

and Fezzey would not be required to obtain federal relief as a condition of employment.

FACTUAL ISSUES PRESENTED BY THIS APPEAL

In reviewing an order of summary judgment our function is to determine whether a genuine issue of material fact exists. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). With this standard of review in mind, we consider whether the Commission waived its right to remove Fezzey's name from the eligibility list. The Commission has the right to disqualify an examinee for falsifying his application. Rules and Regulations of the Snohomish County Civil Service Commission 7.3(E). A review of the trial court record reveals that the evidence presented a material issue of fact as to whether the Commission waived its right under section 7.3(E). Removal of the offending applicant's name under that provision is not mandatory but merely discretionary. It appears that the Commission declined to invoke section 7.3(E). Rather, the Commission made a special provision for Fezzey upon learning of his conviction, preserving his eligibility status by placing his name on a special list. A genuine issue of material fact was presented.

Next we consider whether the evidence presented a genuine issue of material fact concerning the expiration of Fezzey's special eligibility status. The County introduced a certified copy of minutes from the July 6, 1978, civil service commission meeting, indicating that the Commission voted to extend Fezzey's eligibility status for only 4 months. The pertinent portion of those minutes states:

*Custodial Officers*

Rich Lowry briefed the Commission on the status of a gentleman who passed exams for Custodial Officer and [*sic*] placed on the eligibility list. This person has two federal and one state offense which he is trying to be pardoned from. Mr. Lowry suggested the Commission hold him in abeyance for a specific period of time while he processes the necessary paperwork. Discussion was held and A MOTION WAS MADE BY JOE CHEESMAN, SECONDED BY WAYNE BRAA THAT NECESSARY ARRANGEMENTS BE MADE

TO ALLOW FOR A SPECIAL ELIGIBILITY LIST TO HOLD THIS INDIVIDUAL'S NAME FOR FOUR MONTHS.

Fezzey points out: the minutes nowhere refer to him by name; the minutes refer to an examinee with two federal convictions and one state conviction; and Fezzey has but one state conviction on his record. Furthermore, Fezzey stated in his deposition that Deputy Prosecuting Attorney Richard Lowry, who attended the July 6, 1978, meeting, informed him that no expiration date was placed on his special eligibility status, but that the lists typically expired after 1 year. This statement coincides with a civil service commission rule providing: "The term of each list shall normally be for one year and in no event longer than two years." Rules and Regulations of the Snohomish County Civil Service Commission 7.2. Fezzey also stated in his deposition that his counsel, after speaking with Lowry, told him that Lowry said the Commission had voted to hold his name until he obtained his pardon.

The summary judgment procedure is designed to avoid useless trials. Where there is a genuine issue as to any material fact, however, a trial is not useless, but is absolutely necessary. *Balise v. Underwood, supra.* It is not the function of the court but rather of the trier of fact to resolve factual issues. *Balise,* at 199–200. This proffered evidence presented genuine issues of credibility and of material fact sufficient to defeat the motion for summary judgment.

Accordingly, we reverse the order granting the defendant's motion for summary judgment and the dismissal of the action, and remand for trial.

DURHAM, A.C.J., and SCHOLFIELD, J., concur.

Reconsideration denied January 5, 1983.

Review denied by Supreme Court March 29, 1983.