[No. 3375-9-III.   Division Three.   May 29, 1980.]

C. ED HYDE, *Appellant,* v. WELLPINIT SCHOOL DISTRICT No. 49, ET AL, *Respondents.*

*William J. Powell, Sheila A. Malloy,* and *Powell & Harnetiaux,* for appellant.

*Fred L. Stewart* and *McNally & Stewart,* for respondents.

McINTURFF, J.—The appellant, C. Ed Hyde, appeals the dismissal of his action challenging the nonrenewal of his contract as a principal with the respondent, Wellpinit School District No. 49.

In June 1977, Mr. Hyde, a teacher and administrator for 18 years, was employed as a principal for the Wellpinit School District No. 49 (the District) for the 1977–78 school year. Initially, Mr. Hyde enjoyed the confidence of the district superintendent, Jess Cruzen, who reported in November 1977 that he was "working well in all areas." In mid–April 1978, Mr. Cruzen approached him about his salary for the next year and indicated he would recommend renewal of his contract to the District board of directors.

On April 26, a week and a half later, however, Mr. Hyde received a letter from Mr. Cruzen listing 15 "negative items" regarding his performance as principal. After listing some positive qualities, Mr. Cruzen concluded by asking for

his voluntary resignation, "otherwise, I will have no choice but to ask the board for a non–renewal of your contract for the above stated reasons."[1]

---

[1]Mr. Cruzen's April 26 letter to Mr. Hyde stated:

"At this time, I feel much displeasure at what has been happening in the Wellpinit Public Schools during this school year.

"I do feel that you have some very fine administrative qualities. However, I feel that the goals and philosophy that I laid out for the Wellpinit Public Schools has actually not come about. I see you doing your own thing to [sic] often, rather than the requested items.

"Included is my list of complaints:

"1.     Handbook—You did a fine job, however six months late.
"2.     S.L.O.—I feel that very little effort has been put in the Student Learning Objectives by yourself.
"3.     Evaluations—I set up with you a yearly calendar with the I.O.T.A. system included. I see little evidence of that schedule or system.
"4.     Attendance–Discipline—Seemingly, it has been a monumental task that requires nearly all of your time on with very little accomplishment and a lot of frustration.
"5.     Student Activities—I feel that the better students have been neglected, solely, becauses [sic] of differences you had with the minority of the students.
"6.     Ron Curd—I feel that the incident with Ron was not handled well by yourself. I did not appreciate being made a fool of at a District wide Eligibility Committee meeting, after you had done your homework. Secondly, to test my ignorance, by sending it to me a second time without a chance to succeed, so that, I could be made a fool for the second time.
"7.     Senior Talent Show—I see no real effort on your part to make this a successful endeavor.
"8.     Requests of Presence—Non–attendance at the J.O.M. Committee meeting after being requested, due to interviewing a prospective candidate when no position presently exists. (Setting own priorities)
"9.     Attitude—You say you are on my ship. However, I see subversive attitudes toward completion of goals that I have set that you have verbally agreed to complete and or follow.
"10.a.  Scuttlebut—Yesterday, I picked up from faculty members negative attitudes toward the Prom.
"11.b.  Assistance—I feel that I am not getting your assistance in tasks that I consider vital to the total operation of the school. e.g. Evaluations and attitudes toward particular faculty members (Favoritism) In actuality, Non–Compliance with the issues and task at hand.
"12.    Kerry's Basketball Coaching Next Season—I feel that the reason Kerry asked not to be affliated [sic] with the girls program next season was the counseling he received from you. I feel that attitude is subversive to the total program of the school. (I talk teachers into assisting—you talk them out of assisting.)

Believing Mr. Cruzen had acted on impulse, Mr. Hyde asked to talk with the District's board of directors. After discussion at the April 27 meeting, the question of the principal's position was tabled at his request until the next regularly scheduled meeting. That meeting, scheduled for May 9, was postponed for lack of a quorum; but on May 16 the board voted to nonrenew Mr. Hyde's contract.

This action was commenced for declaratory relief seeking a decree renewing his contract, or, in the alternative, granting him the right to a probable cause hearing. The trial court dismissed this action, finding Mr. Hyde had failed to make a timely request for a hearing upon receipt of Mr. Cruzen's letter of April 26.

It is unnecessary to determine whether there was a timely request for a hearing because the determinative issue is whether evaluation criteria and their application to principals under RCW 28A.67.065(2) is a condition precedent to the nonrenewal of a principal's contract. We answer in the affirmative. Subsection (2) of RCW 28A.67.065 provides:

"13. Career Awareness—An objective of the J.O.M. program and evaluation. I have discussed this with you and have placed tentative dates on your calendar. I need this assistance from the building Principal. Again I feel that you do your own thing.

"14. Smoking Area—I expressed my feelings and the school boards [sic]. However, I guess you got your way. Why do you think we have a closed campus?

"15. School Store—Simply, a failure.

"On the other side of the coin, I feel that you have helped many students with your guidance. I feel that you have a fair handle on the faculty, except for one. You do a thorough job of what you do accomplish. You do have patience and spend time with students, faculty and outsiders. You have experience and expertise on many educational related matters. Activities, such as, the Carnival and Homecoming were handled exceptionally well. Your warmth and hospitality have helped our schools [sic] image. Your handling of Youth Employees has been excellent. You are a personable guy who relates well with people. You have been a very professional employee on school matters.

"However, due to my feelings on the fifteen negative items listed earlier, I have no choice but to ask for your resignation.

"I would appreciate your resignation prior to tomorrow's school board meeting.

"Otherwise, I will have no choice but to ask the board for a non–renewal of your contract for the above stated reasons."

(2) Every board of directors *shall* establish evaluative criteria and procedures for all superintendents, principals, and other administrators. It *shall* be the responsibility of the district superintendent or his or her designee to evaluate all administrators. Such evaluation *shall* be based on the administrative position job description. Such criteria, when applicable, *shall* include at least the following categories: Knowledge of, experience in, and training in recognizing good professional performance, capabilities and development; school administration and management; school finance; professional preparation and scholarship; effort toward improvement when needed; interest in pupils, employees, patrons and subjects taught in school; leadership; and ability and performance of evaluation of school personnel.

(Italics ours.)

In *Wojt v. Chimacum School Dist. 49,* 9 Wn. App. 857, 861–62, 516 P.2d 1099 (1973), the court held that the meaning of the term "sufficient cause" had been modified by the former RCW 28A.67.065 insofar as it contemplated the establishment of certain substantive and procedural rights concerning the evaluation of the work of certificated employees and the improvement of stated deficiencies. Noting the severe consequences that attend a teacher's discharge, the court concluded that, "the remediable teaching deficiencies" did not constitute sufficient cause for discharge prior to compliance with the evaluation and probationary procedures of RCW 28A.67.065. *Accord, Van Horn v. Highline School Dist. 401,* 17 Wn. App. 170, 177, 562 P.2d 641 (1977).

The former RCW 28A.67.065 has been expanded to include principals via subsection (2); therefore, the court's analysis in *Wojt* is applicable here. But, contrary to the contentions of Mr. Hyde, the newly enacted RCW 28A.67.065 does not per se require a probationary period for principals. The probationary procedures appear to be specifically limited to certificated classroom teachers and

certificated support personnel. RCW 28A.67.065(1).[2] Notwithstanding this, we find that compliance with the statutory evaluation requirements of RCW 28A.67.065(2) was a condition precedent to the nonrenewal of Mr. Hyde's contract as a principal. In the words of the court in *Wojt* at page 862:

> To hold otherwise would be to ignore the effect and purpose of the new statute, and permit discharge [or in this case, nonrenewal] for acts or conduct within its scope without following the procedures which it prescribes.

The continuing contract law, RCW 28A.67.070, is designed to protect employees of the school district from arbitrary dismissals. *See Foster v. Carson School Dist. 301*, 63 Wn.2d 29, 31, 385 P.2d 367 (1963). To accomplish this purpose, RCW 28A.67.065(2) requires the promulgation of evaluative criteria and the consistent application of that criteria in evaluating the performance of the particular principal.

---

[2]RCW 28A.67.065(1):

"The superintendent of public instruction *shall,* on or before January 1, 1977, establish and may amend from time to time minimum criteria for the evaluation of the professional performance capabilities and development of *certificated classroom teachers and certificated support personnel.* . . .

"Every board of directors *shall,* in accordance with procedure provided in RCW 41.59.010 through 41.59.170, 41.59.910 and 41.59.920, establish evaluative criteria and procedures for all certificated classroom teachers and certificated support personnel. . . .

"It *shall* be the responsibility of a principal or his or her designee to evaluate all certificated personnel in his or her school. During each school year all classroom teachers and certificated support personnel, hereinafter referred to as *"employees"* in this section, *shall* be observed for the purposes of evaluation at least twice in the performance of their assigned duties. . . . Following each observation, or series of observations, the principal or other evaluator shall promptly document the results of the evaluation in writing, and shall provide the employee with a copy thereof within three days after such report is prepared. . . .

"Every *employee* whose work is judged unsatisfactory based on district evaluation criteria *shall* be notified in writing of stated specific areas of deficiencies along with a suggested specific and reasonable program for improvement on or before February 1st of each year. A probationary period *shall* be established beginning on or before February 1st and ending no later than May 1st. The purpose of the probationary period is to give the employee opportunity to demonstrate improvements in his or her areas of deficiency." (Italics ours.)

Even though the statute does not require a probationary period for principals, we cannot assume the legislature intended the evaluation requirements to be of no effect. Indeed, its importance is evidenced by RCW 28A.67.065(4) which states failure to conduct evaluations shall be sufficient cause for nonrenewal of the responsible administrator's contract.[3]

In the absence of established evaluative criteria, the principal serves at the whim and pleasure of the superintendent. The principal has no guidelines against which to measure his or her performance and may thereby be deprived of a legitimate opportunity for improvement. Without knowledge of the criteria to be employed in a discharge or nonrenewal hearing, the principal is further handicapped in his or her ability to dispute the propriety of the termination decision. This was not the intent of the legislature. Furthermore, established evaluative criteria and prior evaluations are important for purposes of judicial review.[4]

This interpretation of RCW 28A.67.065(2) compels reversal. It is undisputed the school district had no established evaluative criteria applicable to principals. In addition, other than an office memo written in November 1977, which stated: "Ed is working well in all areas at this time.", Mr. Hyde was never formally evaluated prior to his receipt of the April 26, 1978, letter from superintendent Cruzen. This letter undoubtedly came as a surprise to Mr. Hyde, since Mr. Cruzen had indicated 1 1/2 weeks earlier that he

---

[3]RCW 28A.67.065(4):

"The failure of any evaluator to evaluate or supervise or cause the evaluation or supervision of certificated employees or administrators in accordance with this section, as now or hereafter amended, when it is his or her specific assigned or delegated responsibility to do so, shall be sufficient cause for the nonrenewal of any such evaluator's contract under RCW 28A.67.070, as now or hereafter amended, or the discharge of such evaluator under RCW 28A.58.450, as now or hereafter amended."

[4]See Sargent v. Selah School Dist. 119, 23 Wn. App. 916, 921–23, 599 P.2d 25 (1979).

would recommend renewal of Mr. Hyde's contract, together with a salary increase.

In this connection it is significant to note that Mr. Hyde had the support of practically all of the District's teachers, who said:

> The teachers (signature below) believe you are doing an excellent job as principal. We want you to continue on here at Wellpinit Public Schools. This is just a token to let you know that we support you 100%.
> [Signed by 19 of the teachers.]

We conclude that the establishment of evaluative criteria and prior evaluation of Mr. Hyde's performance as principal are necessary prerequisites to avoid an unjust termination of his contract. Finding a complete failure of the school district to comply with the requirements and intent of the statute, the attempted nonrenewal was based upon a fundamentally defective foundation. *See Van Horn v. Highline School Dist. 401, supra* at 177; *Wojt v. Chimacum School Dist. 49, supra* at 861–62.

Judgment of the Superior Court is reversed; Mr. Hyde is reinstated to the position of principal; the case is remanded to the Superior Court for determination of damages and reasonable attorney's fees under RCW 28A.58.490.

GREEN, C.J., concurs in the result.

ROE, J. (dissenting)—It appears to me that the majority based its reversal on the failure of the school board to establish evaluative criteria. RCW 28A.67.065(2). Admittedly, no criteria were established in this case, but the statute does not limit discharge of principals or superintendents to a satisfactory compliance with the criteria. The majority has made this leap which the legislature has not as pertains to a principal, not a certificated classroom or support personnel.

I am further convinced that the letter of the superintendent of April 26, 1978, though certainly inartfully drawn and professionally suspect, was sufficient notice to force the

plaintiff to request a hearing within 10 days. RCW 28A.67-.070. Since he failed to demand the hearing, by the terms of the statute he is foreclosed.

*Wojt v. Chimacum School Dist. 49,* 9 Wn. App. 857, 516 P.2d 1099 (1973), is limited in its facts and law and does not apply to principals.

The right of this principal to resist discharge or nonrenewal depends solely upon a right given him by statute and absent such a statute, he may be hired or fired at will. *Roberts v. Atlantic Richfield Co.,* 88 Wn.2d 887, 891, 568 P.2d 764 (1977).

If there is a deficit in the statutory scheme, this case may illuminate it and it should be corrected for the protection and benefit of all parties.

Accordingly, I would affirm the trial court.

Reconsideration denied June 16, 1980.

Review denied by Supreme Court August 15, 1980.