[No. 56351-9. En Banc. October 4, 1990.]

JOANNE ODEGAARD, *Respondent,* v. EVERETT SCHOOL DISTRICT No. 2, *Appellant.*

*Perkins Coie,* by *Joan C. Clarke* and *Lawrence B. Hannah,* for appellant.

*Anderson Hunter* and *Julian C. Dewell,* for respondent.

*Christopher L. Hirst* and *Fred J. Poss* on behalf of Association of Washington School Principals, amici curiae for respondent.

ANDERSEN, J.—

FACTS OF CASE

At issue in this case is whether an elementary school principal's transfer to a teaching position by the school district was an arbitrary, capricious and unlawful decision. We hold that it was not.

Joanne Odegaard, the plaintiff herein, was employed by the Everett School District as principal of Hawthorne Elementary School from 1984 to 1986. She received satisfactory annual evaluations from Everett School District Deputy Superintendent Robert Whitehead, her immediate supervisor, during her years at Hawthorne. She took a year's sabbatical leave in 1986–1987 and returned as principal of Silver Lake Elementary School for the 1987–1988 school year.

On February 9, 1988, Everett School District Superintendent Paul Sjunnesen notified plaintiff that "the best interests of the District" would be served by transferring her to a subordinate certificated (teaching) position for the 1988–1989 school year. In his letter to plaintiff, the superintendent stated that she had not "demonstrated the requisite skills and abilities necessary to be a successful elementary principal." Furthermore, he informed her that she had "severely limited" her effectiveness as a principal by stating to staff, parents and administrators that she neither liked nor wanted an elementary principalship. The superintendent also told plaintiff that she could request an informal meeting with the School Board and seek reconsideration of his decision.

Plaintiff's attorney requested a meeting with the Board and also asked the superintendent to explain more fully why she was being transferred. The superintendent responded that plaintiff lacked leadership, the ability to deal with conflict and the ability to communicate effectively with her staff. As an example, he referred to plaintiff's repeated requests for central office assistance in explaining decisions or procedures to staff that she should have been

able to explain herself. He added that "you have not developed the skills necessary to function effectively as an elementary principal."

At the meeting with the School Board on March 7, 1988, plaintiff and her attorney presented oral and written evidence. One of plaintiff's main complaints was the alleged failure of her superiors to inform her of their concerns in a timely manner so that she could improve her performance and avoid transfer. The superintendent and deputy superintendent discussed their concerns about plaintiff's performance at the meeting, and plaintiff's attorney cross-examined them. On March 11, 1988, the Board notified plaintiff of its unanimous decision to uphold her transfer. The Board recognized plaintiff's contention that the administration had not properly communicated its concerns to her, but credited the deputy superintendent's statements that he regularly spoke to her about limitations in her performance. On June 20, 1988, the deputy superintendent completed plaintiff's annual evaluation and termed her overall performance "unsatisfactory". Her overall ranking was later changed to "satisfactory".

On March 29, 1988, plaintiff filed the present action against the Everett School District (the District) in Snohomish County Superior Court, alleging violations of 42 U.S.C. § 1983 and charging that the decision to transfer her was arbitrary, capricious and contrary to law. The District removed the action to federal court. On February 3, 1989 the federal district court dismissed plaintiff's claim under 42 U.S.C. § 1983 and remanded her state law claims to the Superior Court in Snohomish County.

Both parties moved for summary judgment. Plaintiff claimed that her transfer was null and void because the District failed to evaluate her in accordance with its own procedures and state law before it demoted her. The District claimed that the demotion was proper under RCW

28A.67.073.[1] On July 14, 1989, the Superior Court granted plaintiff's motion for summary judgment on her claim that the transfer decision was arbitrary and capricious because the District failed to follow its own evaluation procedures before demoting her. The court ordered the District to reinstate plaintiff to a position of nontenured elementary school principal for the 1989–1990 school year subject to evaluation in accordance with district and statutory policies and procedures. Following a subsequent motion for summary judgment, the Superior Court awarded plaintiff $14,756.09 in back pay but declined to award her attorneys' fees.

The District appealed both summary judgment orders directly to this court. Plaintiff cross–appealed, challenging the trial court's failure to add compensation for unpaid vacation time to her back pay award, its failure to award her attorneys' fees and its failure to reinstate her to a fully tenured position. The District moved to stay the trial court's decision. Our commissioner partially granted the motion to the extent that the District did not have to reinstate plaintiff for the 1989–1990 school year; a stay was denied, however, with respect to paying plaintiff the principal's salary she would have received had she been reinstated.

We granted direct review and consider one issue dispositive of the appeal.

## ISSUE

Was the District's decision to transfer an elementary school principal to a teaching position arbitrary and capricious and contrary to law?

---

[1]RCW 28A.67.073 was recodified as RCW 28A.405.230 by the 1990 Legislature. The 1990 Legislature reorganized and recodified Title 28A in Laws of 1990, ch. 33, p. 170. The changes are technical rather than substantive in nature. This opinion will refer to the applicable statutes as they were codified prior to the 1990 amendments.

DECISION

CONCLUSION. Under Washington law, the transfer of a nontenured principal is a discretionary decision that need not be preceded by formal evaluation procedures. The District's own regulations do not provide greater protection by requiring an administrator to be evaluated before being transferred to a teaching position.

██ There is no statutory right of appeal from a school board decision upholding a decision to transfer an administrator to a subordinate certificated position.[2] Because such a transfer is an administrative decision, the scope of judicial review is limited to determining if the board's decision was arbitrary, capricious, or contrary to law.[3] An agency's violation of the rules which govern its exercise of discretion is contrary to law.[4] The issue here thus turns on what rules govern the transfer of a nontenured principal to a teaching position. A brief overview of the statutes affecting a principal's employment is helpful in understanding those rules.

RCW 28A.67.073, the transfer statute, provides that any administrator "shall be subject to transfer, at the expiration of the term of his or her employment contract, to any subordinate certificated position within the school district." In the case of principals, "such transfer shall be made at the expiration of the contract year and only during the first three consecutive school years of employment as a principal by a school district; . . . ".[5] (After serving 3 consecutive years as principal, the employee is tenured, and may be

---

[2]RCW 28A.67.073; *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 218, 643 P.2d 426 (1982).

[3]*Williams*, at 221 (citing *Helland v. King Cy. Civil Serv. Comm'n*, 84 Wn.2d 858, 862, 529 P.2d 1058 (1975)).

[4]*Pierce Cy. Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 694, 658 P.2d 648 (1983); *Leonard v. Civil Serv. Comm'n*, 25 Wn. App. 699, 701–02, 611 P.2d 1290, *review denied*, 94 Wn.2d 1009 (1980).

[5]RCW 28A.67.073.

removed from his or her job only by nonrenewal or discharge; these procedures are described below.) The sole standard governing such a transfer is the superintendent's decision that "the best interests of the school district would be served". The superintendent is to notify the administrator of the transfer on or before May 15, state the reasons for the transfer and identify the position to which the administrator will be transferred.[6] The transfer statute also provides that the administrator may request an informal meeting with the board of directors to seek reconsideration of the superintendent's decision. At such a meeting, the administrator may refute any facts supporting the transfer decision, argue in support of reconsideration and invite legal counsel to participate.[7]

As the federal district court observed in transferring this case back to state court, nothing in the language of the transfer statute requires a showing of "cause" for a transfer to a subordinate certificated position. "Rather," said that court, "on its face this statute establishes that such a transfer is a wholly discretionary decision originating with the district superintendent and subject, at the transferee's request, to informal review by the school board." This court adopted a similar view in discussing a demotion of vice–principals to teaching positions in *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 220, 643 P.2d 426 (1982): "Like the initial decision of the superintendent, the board's reconsideration is no more than an exercise of administrative discretion."

Other decisions affecting an administrator's employment do require, by statute, a showing of cause. Before nonrenewal of an administrator's contract for the next term, probable cause must be shown.[8] Similarly, before an administrator's discharge during a term, probable cause

---

[6]RCW 28A.67.073.

[7]RCW 28A.67.073.

[8]RCW 28A.67.070 (recodified as RCW 28A.405.210).

must be shown.[9] Both the nonrenewal and discharge statutes state that neither procedure is to be construed as a transfer as set forth in RCW 28A.67.073.

None of the three statutes speaks to what sort of evaluations must precede, accompany, or follow a transfer, nonrenewal or discharge decision. Public school employee evaluations are governed by RCW 28A.67.065.[10] Subsection (1) of this statute discusses teacher and support personnel evaluations, and provides that every employee whose work is judged unsatisfactory shall be notified on or before February 1 of a given year. The employee is then on probation from February 1 until May 1 at the latest. If no improvement is shown during the probationary period, that lack of improvement "shall constitute grounds for a finding of probable cause under RCW 28A.58.450 [the discharge statute] or RCW 28A.67.070 [the nonrenewal statute] . . . ".[11]

Subsection (2) of the statute applies to principals; it provides as follows:

Every board of directors shall establish evaluative criteria and procedures for all superintendents, principals, and other administrators. It shall be the responsibility of the district superintendent or his or her designee to evaluate all administrators. Such evaluation shall be based on the administrative position job description. Such criteria, when applicable, shall include at least the following categories: Knowledge of, experience in, and training in recognizing good professional performance, capabilities and development; school administration and management; school finance; professional preparation and scholarship; effort toward improvement when needed; interest in pupils, employees, patrons and subjects taught in school; leadership; and ability and performance of evaluation of school personnel.

---

[9]RCW 28A.58.450 (recodified as RCW 28A.405.300).

[10]Recodified as RCW 28A.405.100.

[11]RCW 28A.67.065(1).

RCW 28A.67.065(2). As this section demonstrates, principals have no statutory right to a probationary period.[12]

RCW 28A.67.065 does not state when an administrator or any other school employee must be evaluated; nor does any other statute or code specify a date or point in time for completion.[13] The evaluations, which occur annually, commonly are finalized toward the end of the school year.[14] In this case, the deputy superintendent stated at the Board meeting that plaintiff would be formally evaluated in the spring, as are all other administrators. An exception to this practice occurs when a regular certificated employee (as opposed to an administrator) is performing unsatisfactorily. Since such a determination triggers a probationary period that must start on February 1, an unsatisfactory employee's annual evaluation will probably occur in January or before.[15]

Since there is no corresponding probationary period for unsatisfactory principals, the need for an early evaluation is not statutorily mandated. Plaintiff argues, however, that if the evaluation requirements set forth in RCW 28A.67-.065(2) are to have any effect on a nontenured principal, the annual evaluation should occur long enough before a transfer decision is made so that the principal may attempt to improve his or her performance before the superintendent decides that transfer is in the district's best interests.

As support, plaintiff cites *Hyde v. Wellpinit Sch. Dist. 49*, 26 Wn. App. 282, 611 P.2d 1388, *review denied*, 94

---

[12]*Benson v. Bellevue Sch. Dist. 405*, 41 Wn. App. 730, 738, 707 P.2d 137, *review denied*, 105 Wn.2d 1001 (1985); *Hyde v. Wellpinit Sch. Dist. 49*, 26 Wn. App. 282, 286, 611 P.2d 1388, *review denied*, 94 Wn.2d 1007 (1980).

[13]J. Biggs, *Administrator's Guide to Certificated Employee Due Process Procedures* 17 (1980).

[14]J. Biggs, at 17, 23.

[15]*See* J. Biggs, at 17.

Wn.2d 1007 (1980). In *Hyde,* a superintendent recommended the nonrenewal of a principal's contract after telling the principal a week and a half earlier that his contract would be renewed. The Board voted to nonrenew the contract and the trial court affirmed, but the Court of Appeals reversed. The Court of Appeals held that application of the evaluative criteria under RCW 28A.67.065(2) was a condition precedent to nonrenewal of a principal's contract.[16] In so holding, the court observed that the nonrenewal statute, RCW 28A.67.070, is designed to protect employees of the school district from arbitrary dismissals.[17] "To accomplish this purpose, RCW 28A.67.065(2) requires the promulgation of evaluative criteria and the consistent application of that criteria in evaluating the performance of the particular principal."[18] The court then highlighted the importance of requiring section .065(2) evaluations to precede a nonrenewal decision:

> In the absence of established evaluative criteria, the principal serves at the whim and pleasure of the superintendent. The principal has no guidelines against which to measure his or her performance and may thereby be deprived of a legitimate opportunity for improvement. Without knowledge of the criteria to be employed in a discharge or nonrenewal hearing, the principal is further handicapped in his or her ability to dispute the propriety of the termination decision. This was not the intent of the legislature. Furthermore, established evaluative criteria and prior evaluations are important for purposes of judicial review.

(Footnote omitted.) *Hyde,* 26 Wn. App. at 288. At least one commentator cites *Hyde* as requiring a section .065(2) evaluation to precede both nonrenewal *and* demotion for performance problems.[19]

---

[16]*Hyde,* 26 Wn. App. at 285.

[17]*Hyde,* 26 Wn. App. at 287.

[18]*Hyde,* 26 Wn. App. at 287.

[19]Morris, *Discipline, Nonrenewal and Discharge: Substantive and Procedural Constitutional Constraints, State Law and Collective–Bargaining Agreements,* in

 As the District points out, however, *Hyde* concerned the *nonrenewal* of a tenured principal's contract (though the principal's status is not specifically referred to in the opinion, his 18 years of district employment probably left him with tenure), and tied its evaluation requirement to the *termination* of the principal's contract. It thus made sense in *Hyde* to require an evaluation before a nonrenewal decision was reached, because such a decision must be supported by probable cause. Without probable cause, a nonrenewal decision is clearly unlawful. A *transfer* under RCW 28A.67.073, however, is a far more discretionary decision that requires only consideration of a district's "best interests", *not* probable cause. Thus, the logic of requiring an evaluation before transfer, as in the present case, is by no means obvious.

To highlight the discretionary standard set forth in the transfer statute, the District points to this court's opinion in *Williams v. Seattle Sch. Dist. 1,* 97 Wn.2d 215, 643 P.2d 426 (1982). In *Williams,* several vice–principals challenged their demotion to teaching positions after the district eliminated the vice–principal positions because of financial considerations. This court affirmed the district's decision without referring to any need for an evaluation under RCW 28A.67.065(2). As noted earlier, this court there termed the transfer decision "no more than an exercise of administrative discretion."[20]

Plaintiff maintains, however, that transfers for financial or administrative reasons should be distinguished from those made for performance–based reasons. While she would uphold the District's total discretion to transfer administrators for financial reasons, she argues that RCW 28A.67.065(2) evaluations must precede a superintendent's

---

*Second Annual Washington State Institute on School Employment Law,* 508, 542 (Nov. 5, 1987).

[20]*Williams v. Seattle Sch. Dist. 1,* 97 Wn.2d 215, 220, 643 P.2d 426 (1982).

decision to transfer an administrator because of incompetency.

As additional support for her argument that performance–related transfers warrant special treatment, plaintiff points to Procedure 6410P, a set of regulations promulgated by the Everett School District. The District created these regulations to implement a Board policy regarding administrative evaluations. The policy statement, adopted November 21, 1980, is entitled "Administrative Performance Evaluation", and states simply that "[a]dministrators shall be evaluated during each school year in accordance with legal requirements. Procedures will be developed by the Superintendent or designee." At the bottom of the page of regulations are noted two "legal references": RCW 28A-.67.065 (the evaluation statute) and RCW 28A.67.073 (the transfer statute), together with their titles.

The procedures themselves are entitled "Administrative Staff Evaluation". The first paragraph states that every employee whose work is judged unsatisfactory shall be put on probation by February 1 and given until May 1 to show improvement. The procedures go on to state that if an evaluator contemplates recommending that an administrator be placed on probation, "an evaluation shall be made on or before January 15." The procedures describe in detail how a remedial program is to be set up by the evaluator and superintendent and put into effect during the probationary period. The procedures closely follow those in RCW 28A.67.065(1) for setting up probationary periods for teachers. Procedure 6410P, like section .065(1), provides for two courses of action at the end of the probationary period. If the administrator has demonstrated sufficient improvement, the probationary status will be removed. If the superintendent does not find sufficient improvement in the stated areas of deficiency, however, he or she "shall make" a determination of probable cause for the nonrenewal of the employee's contract pursuant to RCW 28A.67.070. There is no mention of the possibility of transfer; indeed, there is no

reference to either demotion or RCW 28A.67.073 in Procedure 6410P.

The trial court recognized that the District's Procedure 6410P was not a good fit in this case, but nevertheless concluded that plaintiff had a right to rely on the policy statement and procedures when she was found to have performance deficiencies. The District argues, however, that the trial court erred in so doing, and that the evaluation procedures are irrelevant to the plaintiff since they are tied to *nonrenewal* decisions. We find this argument persuasive.

As we have pointed out, the District's Procedure 6410P parallels RCW 28A.67.065(1), which in turn outlines the probationary period to be set up for teachers who are not performing satisfactorily. The section .065(1) probation results in either retention or a finding of probable cause for nonrenewal or discharge. It appears that the District applied the outline of section .065(1) to administrators in this fashion in order to properly gather support for a possible finding of probable cause for nonrenewal. Plaintiff maintains that if Procedure 6410P does not apply to RCW 28A.67.073 demotions, it does not comply with the District's policy statement. It is likely, however, that the District saw no need to apply evaluative procedures to demotions. Procedure 6410P may well make no reference to demotion, transfer or RCW 28A.67.073 because no showing of cause is needed to make such a decision and an early evaluation and a probationary period are thus unnecessary. Indeed, we conclude that the evaluation and probationary requirements in Procedure 6410P are inconsistent with the only statutory prerequisite for a transfer; that is, the superintendent's decision that a transfer is in the District's best interests. As the District points out, the "best interests" standard focuses on a school district's interests in its educational program, *not* on a nontenured principal's performance.

Other courts have declined to require procedural prerequisites to transfers in the face of similar statutory discretion. A director of special education appealed his demotion

to the position of school psychologist in *McCoy v. Lincoln Intermediate Unit 12,* 38 Pa. Commw. 29, 391 A.2d 1119 (1978), *cert. denied,* 441 U.S. 923 (1979). The director charged that the statute under which he was demoted failed to set forth any standards of conduct upon which a demotion could be based and was constitutionally void for vagueness.[21] The court noted that the statute explained why and how an employee could be discharged but only *how* an employee could be *demoted.* Still the statute was held not to be void for vagueness.[22] The *McCoy* court decided that the necessity of the Board maintaining an efficient and competent school system was a valid reason for the demotion of a school employee:

> '"We must reiterate that a court is not a super Board of directors with superior knowledge of the administration of business, finance, or the science of pedagogics. It would be presumptuous to superimpose judicial control upon the exercise of discretion by trained educators. The legislature has vested wide powers in the Board of school directors. . . . Our appellate courts repeatedly have affirmed their exercise of this discretion."'

*McCoy,* at 36 (quoting *Smith v. Darby Sch. Dist.,* 388 Pa. 301, 315, 130 A.2d 661 (1957)).[23]

In the state of California, administrative transfers have also been held to be highly discretionary decisions. Administrators are not given tenure as administrators; no hearing is provided following an administrative transfer; and no reasons for the transfer need be given unless requested.[24] The California Court of Appeals explained the paucity of protection against administrative demotions and even discharges as follows:

---

[21] *McCoy v. Lincoln Intermediate Unit 12,* 38 Pa. Commw. 29, 34, 391 A.2d 1119 (1978), *cert. denied,* 441 U.S. 923 (1979).

[22] *McCoy,* 38 Pa. Commw. at 35.

[23] *See also* 1 J. Rapp, *Education Law* § 6.08[4], at 6–182 (1990).

[24] *Hentschke v. Sink,* 34 Cal. App. 3d 19, 22, 109 Cal. Rptr. 549 (1973); *see also* Cal. Educ. Code §§ 44893, 44896 (West 1977).

a second or third level administrator bears to his superiors a relationship of the most intimate nature, requiring complete trust by the top administrators in the judgment and cooperative nature of the subordinate. The loss of that trust is not a matter susceptible of proof such as is involved in the cases where a classroom teacher is dismissed or demoted for objective acts of misconduct. To introduce into the administrative structure the elements of discharge for "cause" and of formal hearing would be to make effective school administration impossible. The statutes do not require that.

*Hentschke v. Sink,* 34 Cal. App. 3d 19, 23, 109 Cal. Rptr. 549 (1973). We note, however, that since *Hentschke* was written, the California statute dealing with transfer of administrative employees to teaching positions has been recodified and amended. As amended, if the reasons provided for a transfer include incompetency, an evaluation of the administrator "shall have been completed not more than 60 days prior to the giving of the notice of the transfer."[25] We note furthermore that this was a legislative decision, not a judicial one.

Such administrative evaluations would probably be helpful in supporting transfer decisions.[26] The question here, however, is whether they are an essential prerequisite to a performance–based transfer under Washington statutory law and District policy. In an amicus brief, the Association of Washington School Principals (AWSP) would find the answer in RCW 28A.67.065(3). This section of the evaluation statute reads as follows:

> Each certificated employee shall have the opportunity for confidential conferences with his or her immediate supervisor on no less than two occasions in each school year. Such confidential conference shall have as its sole purpose the aiding of the administrator in his or her professional performance.

[25]Cal. Educ. Code § 44896 (West 1977).

[26]*See* 1 J. Rapp, § 6.08[4], at 6–184.2; J. Beckham, *Legally Sound Criteria, Processes and Procedures for the Evaluation of Public School Professional Employees,* 14 J. L. & Educ. 529 (1985).

RCW 28A.67.065(3). AWSP argues that while RCW 28A-.67.065(2) does not require a probationary period for principals, subsection (3) requires twice-yearly conferences to discuss an administrator's performance and thus enables the administrator to be evaluated and to respond to criticisms before a transfer decision is made.

The District replies that all section .065(3) requires is the *opportunity* for such conferences, and that it in no way makes such conferences a *prerequisite* to transfer decisions. The District argues persuasively that AWSP and the plaintiff are here attempting to transform RCW 28A.67.073 from a discretionary statute into a "sufficient cause" statute through their interpretations of RCW 28A.67.065(2) and (3).

While there is no question that annual evaluations and evaluative conferences are required under RCW 28A.67.065, nothing in the statute requires them before a transfer decision is made pursuant to RCW 28A.67.073. As observed earlier, no state law or code requires evaluations to take place at a certain time. It makes sense to require evaluations before a discharge or nonrenewal decision, since such evaluations may provide the probable cause needed to buttress nonrenewal or discharge. Transfer of a nontenured principal, however, need not be supported by cause. By statute, such a decision need only be supported by the superintendent's determination that transfer is in the best interests of the district. Thus, there is no need for a preceding evaluation.

Under the existing statutory framework established by our Legislature, we therefore hold that RCW 28A.67.073, which states that the only prerequisite for an administrative transfer is the finding that such a transfer is in the district's best interests, governs the transfer of a nontenured principal. Neither the District's Procedure 6410P nor RCW 28A.67.065(2) and (3) supply additional procedural prerequisites for a transfer decision. It thus follows that plaintiff's transfer was neither arbitrary, capricious nor contrary to law, and that the trial court's order granting

plaintiff's summary judgment must be reversed. Given our resolution of this determinative issue, we need not address the additional issues raised.

Reversed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, DURHAM, SMITH, and GUY, JJ., concur.