[No. 47892–9.   En Banc.   April 8, 1982.]

LUCILLE WILLIAMS, ET AL, *Respondents,* v. SEATTLE SCHOOL DISTRICT NO. 1, *Appellant.*

*Michael Hoge, General Counsel,* and *Perkins, Coie, Stone, Olsen & Williams,* by *Lawrence B. Ransom,* for appellant.

*Betts, Patterson & Mines, P.S.,* by *Michael Mines* and *James D. Nelson,* for respondents.

UTTER, J.—This is a direct appeal from a trial court decision finding arbitrary, capricious and contrary to law a school board determination upholding a superintendent's transfer of elementary school vice–principals to teacher positions. We reverse the trial court and reinstate the decision of the board.

On or about May 15, 1979, each of the respondent teachers received a letter sent by the Superintendent of the Seattle School District, pursuant to RCW 28A.67.073,

informing them they were being transferred from their vice–principal positions to "subordinate certificated positions" as teachers for the following academic year. The notice stated:

This determination was made because of declining enrollment and lack of sufficient funds and was based upon the "Administrative Reassignment, Layoff and Recall" policy applicable to certificated administrative staff.

If you wish an opportunity to meet informally with the Board of Directors in executive session for the purpose of requesting the Board to reconsider this decision, you must file with the Superintendent or the President of the Board a written request for such a meeting within ten (10) days after receiving this notice.

Clerk's Papers, at 85.

Pursuant to statute, respondents made a timely request for an informal meeting with the board of directors. During the summer months, respondents engaged in a discovery process which disclosed that the district had changed its policy of providing vice–principals for elementary schools with 450 or more students to providing vice–principals only for elementary schools with 700 or more students. This policy change effectively eliminated the vice–principal position in Seattle elementary schools. After hearing about the elimination of the vice–principal positions, principals in the affected elementary schools complained to the district. Due to the concern expressed by these principals, the district created a head teacher position for 5 of the 12 affected schools. Only one of the respondents (Margaret Sonier) was chosen to fill one of the new head teacher positions.

On January 3, 1980, an informal meeting between respondents and the school board was held pursuant to RCW 28A.67.073. Thereafter, the deposition of one of the respondents (Margaret Garbe) was taken on January 15, 1980. On January 28, 1980, the district sent to respondents' counsel a written statement of the board's decision to uphold the superintendent's transfer of respondents to teacher positions. Respondents commenced this action in

superior court on February 26, 1980. On April 20, 1980, the trial court judge held unconstitutional RCW 28A.67.073's bar to judicial review, and held further that the district's actions with respect to respondents were arbitrary, capricious and contrary to law. The district's direct appeal to this court followed.

RCW 28A.67.073 sets forth the statutory procedures by which vice–principals may be transferred to subordinate certificated positions as teachers. It states:

> No appeal to the courts shall lie from the final decision of the board of directors to transfer an administrator to a subordinate certificated position: . . .

The trial court found this language unconstitutional on the ground that it undermined the court's inherent power of judicial review. This approach is not well taken. The statute articulates no more than an express statutory bar to judicial review. A constitutional right to judicial review still exists notwithstanding the statutory bar. This does not make the statute unconstitutional, but does restrict the nature of judicial review. *See Kelso Sch. Dist. 453 v. Howell,* 27 Wn. App. 698, 621 P.2d 162 (1980). RCW 28A-.67.073 does no more than deny a statutory basis for judicial review.

While recognizing the statutory bar, respondents argue they may obtain judicial review by writ of certiorari pursuant to RCW 7.16.040. The writ of certiorari is available only for review of actions "judicial" in nature. Our courts have developed a 4–part test for determining whether administrative action is quasi–judicial. That test is:

> (1) whether a court could have been charged with making the agency's decision; (2) whether the action is one which historically has been performed by courts; (3) whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability; and (4) whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators.

*Washington Fed'n of State Employees v. State Personnel
Bd.*, 23 Wn. App. 142, 145–46, 594 P.2d 1375 (1979).

The procedural apparatus of RCW 28A.67.073 is only a
shadow of a judicial hearing. When a superintendent trans-
fers an administrator to a "subordinate certificated posi-
tion", he or she must notify the employee of the reasons for
the transfer and identify the position to which the admin-
istrator will be transferred. The administrator may then
request "to meet informally with the board of directors in
an executive session thereof for the purpose of requesting
the board to reconsider the decision of the superintendent."
Furthermore,

> At such meeting the administrator shall be given the
> opportunity to refute any facts upon which the determi-
> nation was based and to make any argument in support
> of his or her request for reconsideration. The administra-
> tor and the board may invite their respective legal coun-
> sel to be present and to participate at the meeting. The
> board shall notify the administrator in writing of its final
> decision within ten days following its meeting with the
> administrator.

RCW 28A.67.073. From this statute, respondents infer that
a "hearing" must be convened to "review the Superintend-
ent's exercise of administrative discretion." (Italics omit-
ted.) Brief of Respondents, at 10. From the statute,
respondents derive a right of counsel, board responsibility
to interpret the statute, determination of individual rights,
and the making of a verbatim record. Thus, they conclude
that the statute involves the ordinary business of the
courts.[1]

■ Respondents' inferences from the statute are not
well supported by the language of the statute. No hearing is
required; the statute provides only for an informal meeting
with the board. While counsel may be present and partici-

---

[1]While the board's informal meeting with respondents did involve formal tes-
timony and a verbatim record, this appears more the result of the district's
awareness the controversy was a test case that would be appealed to determine
the requirements of RCW 28A.67.073, than it was the district's attempt to comply
with the statute's requirements.

pate in the meeting, the statute does not indicate that formal legal representation with direct and cross-examination is permissible. The board need only interpret the statute to the extent it must decide whether the superintendent's decision was in the "best interests of the district." No findings of fact need be rendered; no reasons need be articulated; no verbatim record is required. The board's reconsideration of the superintendent's decision is quite discretionary. While strict adherence to judicial process is not required to make an administrative tribunal's decision "quasi-judicial", correspondingly, the form in which the

> administrative body assembles itself for a hearing and the fact that it takes testimony and resolves disputed questions of fact and enters findings and conclusions, do not per se make its functions judicial or quasi-judicial rather than administrative.

*Green v. Cowlitz Cy. Civil Serv. Comm'n*, 19 Wn. App. 210, 215, 577 P.2d 141 (1978).

The dispositive criterion for determining if the board's action is quasi-judicial is whether the board's determination of what is in the best interests of the district is easily susceptible to judicial review. The board need only "reconsider" whether the superintendent's decision is "in the best interests of the school district." The written statement of its decision need not articulate reasons or justifications. Like the initial decision of the superintendent, the board's reconsideration is no more than an exercise of administrative discretion.

■ Applying the 4-part test of the *Federation* case, we may concede to respondents that a court could have been charged with making the board's decision, and that historically such decisions have been considered judicial (the ancestor of RCW 28A.67.073, RCW 28A.67.070, articulates a judicial process). But the board's determination of what is in the best interests of the school district is not appropriately characterized as an application of law to fact, and the broad discretionary authority the statute confers upon the board does not resemble the ordinary business of the

courts.

Finally, respondents argue the court should exercise its inherent powers of judicial review and find the board's action arbitrary, capricious or contrary to law.

The scope of judicial review of administrative decisions in our inherent supervisory capacity is quite narrow.

[T]he judiciary will only review the actions of an administrative agency to determine if its *conclusions* may be said to be, *as a matter of law,* arbitrary, capricious, or contrary to law.

*Helland v. King Cy. Civil Serv. Comm'n,* 84 Wn.2d 858, 862, 529 P.2d 1058 (1975); *Reiger v. Seattle,* 57 Wn.2d 651, 653, 359 P.2d 151 (1961).

Some of our recent cases have called for a 2–step process by which to determine whether we should exercise our inherent review powers. Not only must administrative determinations be "arbitrary, capricious or contrary to law", but the determination must also violate so–called "fundamental rights". *See, e.g., Leschi Imp. Coun. v. State Hwy. Comm'n,* 84 Wn.2d 271, 525 P.2d 774 (1974); *State ex rel. Hood v. State Personnel Bd.,* 82 Wn.2d 396, 511 P.2d 52 (1973); *State ex rel. DuPont–Fort Lewis Sch. Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963).

While we do not disagree with the analysis in the above cited cases and concur in their result, we believe it is misleading to consider our inherent review powers as dependent on *separate* determinations of (1) is the decision arbitrary, capricious or contrary to law, and (2) does the decision violate constitutional rights.

In *DuPont,* we introduced the notion of fundamental rights in the context of ascertaining whether inherent review was warranted. We cited *State ex rel. Cosmopolis Consol. Sch. Dist. 99 v. Bruno,* 59 Wn.2d 366, 367 P.2d 995 (1962), as representing

an accepted judicial approach to reviewability of administrative actions which, though discretionary and functionally nonjudicial, would, if illegally or arbitrarily and capriciously exercised, do violence to fundamental rights.

*DuPont,* at 794. But we did not mention "fundamental rights" in *Cosmopolis. Cosmopolis* involved review of school authorities' determination of financial contributions between districts in a building program under RCW 28.56-.010. We applied the arbitrary and capricious standard of review to determine whether the school authorities' "function was legally performed." *Cosmopolis,* at 369. In *DuPont* itself, while we referred to "fundamental rights", our analysis reveals the "fundamental right" we examined was only a right not to be subject to administrative action that is arbitrary, capricious or contrary to law. We stated judicial review depends on

> whether compliance with high school academic, personnel, and facility standards, by any school district serving more than 36 high school students, entitles such district to high school accreditation as a matter of fundamental right, regardless of other considerations. Stated another way: Does the board legally possess discretionary power to deny such an application for high school accreditation upon grounds other than failure to meet minimum attendance, academic, personnel, and facility standards?

62 Wn.2d at 794. *See Wilson v. Nord,* 23 Wn. App. 366, 372, 597 P.2d 914 (1979).

Appellant is quite correct in asserting there is no constitutional right to public employment in Washington. *Giles v. Department of Social & Health Servs.,* 90 Wn.2d 457, 461, 583 P.2d 1213 (1978). But that assertion is not dispositive of whether we should exercise our inherent power of judicial review. As we stated in *Standow v. Spokane,* 88 Wn.2d 624, 631, 564 P.2d 1145 (1977), "The courts possess inherent power, whatever the proceedings may be labeled, to protect individual citizens from arbitrary action, including the denial of a license to pursue such an occupation." Respondents in this case had a legitimate expectation of freedom from arbitrary action, which dictates being treated consistent with the statutes and policies governing their employ. *See Green v. Cowlitz Cy. Civil Serv. Comm'n, supra; Tacoma v. Civil Serv. Bd.,* 10 Wn. App. 249, 518 P.2d 249 (1973). That expectation is fundamental.

The district's Administrative Reassignment, Layoff and Recall policy dictates the manner in which an administrator may be transferred. A transfer must be based on one or more of the following criteria:

A. Key organization functions
B. Educational goals and program continuity
C. Special and unique skills and expertise
D. Legal compliance to applicable requirements of law and policy such as Affirmative Action
E. Total district administrative seniority

Clerk's Papers, at 76. Because of the declining enrollment and lack of funds the district found it necessary to reduce its administrative staff, and found the elementary school vice–principal position the most expendable. That decision conforms with the definition of "Educational Goals and Program Continuity" provided by the district in a memorandum dated April 11, 1979, which was in effect when respondents' transfers occurred. The memorandum states:

2. *Educational Goals and Program Continuity*—The District educational goals and objectives, that are published each year, are utilized. The 1978–79 goals focus on seven major areas of concern: educational excellence, desegregation/integration, systematic long–range planning, responsible fiscal management, continuance of the Board as an effective instrument of public policy, improved management process, and strengthened community involvement.

Respondents' Exhibit 3. The trial court nevertheless held:

The decision to change the criteria under which an elementary school qualified for a vice principal was made entirely without consideration of the previously adopted criteria in the Administrative Reassignment, Layoff and Recall document (Exhibit 1) and entirely without consideration of the needs of the affected schools as evidence [*sic*] by the request from the principals for assistance and as evidenced by the subsequent creation of the head teacher positions to perform duties virtually identical to those that have previously been performed by the vice principal.

Conclusion of law 3(a), Clerk's Papers, at 14–15.

The trial court did not contradict the economic concerns of the district, but seemed to focus on the district's failure to focus on the educational needs of the affected elementary schools. That focus would seem inappropriate. If the district was forced to make cuts, the appropriate focus is on whether the cuts it did make were not arbitrary or capricious. A decision to preserve positions in the schools for older students and sacrifice the positions in the elementary schools does not appear arbitrary or capricious. The district's subsequent decision to add head teacher positions in five of the affected elementary schools is not evidence of its arbitrary or capricious action. It merely represents a compromise to save money while minimizing the damage caused by the perceived necessary cuts.

Undoubtedly, the district's decision to eliminate the vice–principal position in elementary schools and its later decision to add some head teacher positions created morale problems. Reductions in staff and consolidations in roles should occur with the least possible disruption of professional goals and aspirations. The district demonstrated an awareness of this problem, and the staffing changes that occurred were not arbitrary, capricious or contrary to law.

Respondents also argue the district's failure to give them preferential consideration for the head teacher positions, notwithstanding the fact that the positions are virtually identical to the vice–principal positions they had held, was arbitrary and capricious. The trial court agreed. The differences in the head teacher job description are that it does not involve evaluation of teachers, and does involve curriculum evaluation. In addition, the qualifications for the head teacher position are less rigorous and the work year is shorter than that of a vice–principal.

Respondents state in their brief they do not argue that a school district cannot reduce salaries and require the same job to be performed. *Diedrick v. School Dist. 81,* 87 Wn.2d 598, 605, 555 P.2d 825 (1976) held as much in its statement:

> a district properly may reduce salaries and require the same job to be performed, or it may abolish and consoli-

date employment positions and impose the duties on other employees where done in good faith and in a manner consistent with the district's economic exigencies . . .

Despite the minor differences in job description, appellant would seem to concede that many of the tasks of the head teacher are administrative. See Reply Brief of Appellant, at 14 n.2.

The testimony before the board indicated that one of the ways the school district sought to meet budget deficits was by consolidating roles. The ability to reclassify would seem crucial to any successful consolidation effort. In classifying the head teacher job as a "teaching" and not "administrative" position, the district acted within the wide discretion accorded it in *Diedrick*. In filling the head teacher positions, it followed its policy requirements, which state:

> An administrator unable to retain an assignment on the administrative salary schedule shall be offered a position on the teachers' salary schedule according to *total seniority,* certification, and category qualifications thus replacing a teacher with less seniority.

(Italics ours.) Clerk's Papers, at 77.

The trial court also held that the district's action was arbitrary and capricious and contrary to law because notice to respondents was inadequate, and because respondents were not provided a timely hearing and a meaningful opportunity to be heard. We follow a functional analysis of the adequacy of notice. *Robel v. Highline Pub. Schools Dist. 401,* 65 Wn.2d 477, 398 P.2d 1 (1965). The superintendent followed the requirements of RCW 28A.67.073 by notifying respondents of their transfer "in writing on or before May 15th preceding the commencement of such school term". The superintendent was also required to notify respondents of the "reason or reasons for the transfer". In attempting to fulfill that requirement, the superintendent stated the transfer was "made because of declining enrollment and lack of sufficient funds and was based upon the 'Administrative Reassignment, Layoff and Recall' policy applicable to [respondents]." Clerk's Papers, at 85.

This notice did not state the precise reason for the transfer. Nevertheless, engaging in discovery, respondents received in mid–June a copy of documents from the district which informed them fully of the district's policy change for vice–principals in elementary schools. See Affidavit of Gary M. Little, exhibit D.

The superintendent's notification, combined with the document production by the district in mid–June, fully notified respondents of the reasons for their transfer. If there was any defect in notice, it was not prejudicial to respondents. The respondents offer no valid reason for holding the district to account for the late date of the "informal meeting" (January 3, 1980). Protracted discovery does not explain the reason for the late date of the informal meeting; the record does not reflect that the district caused the delay, nor does the delay reflect a denial of process or a meaningful opportunity to be heard.

Respondents did not complain of insufficient notice at the informal meeting with the board, and respondents' counsel showed no lack of knowledge of what the issues were. We hold the board did not violate any of the provisions of RCW 28A.67.073.

Finally, regardless of the result reached above, RCW 28A.67.073 does not authorize an award of attorneys fees and respondents should have been denied their request for attorneys fees. The judgment of the trial court is reversed and the board's decision is reinstated.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.