IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| KENNETH SMITH, Central Washington University Accounting Professor and LORI WAIGHT, resident in the Kent School District,<br><br>Appellant,<br><br>v.<br><br>KENT SCHOOL DISTRICT, NO. 415, a public school district (KENT SCHOOL DISTRICT BOARD OF DIRECTORS from March 2018 to present: DEBBIE STRAUS, KAREN DeBRULER, ROSS HARDY, MAYA VENGADASALAM, DENISE DANIELS, LESLIE HAMADA, MICHELE BETTINGER AND LEAH BOWEN; CALVIN WATTS, Superintendent of KENT SCHOOL DISTRICT; and ISRAEL VELA, Chief Officer of KENT SCHOOL DISTRICT),<br><br>Respondents. | No. 82613-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — Following their exclusion from a meeting of a Kent School Board (Board) advisory committee, Kenneth Smith and Lori Waight[1] filed a series of complaints with the Kent School District (District). When the District failed to resolve the complaints to their satisfaction, they appealed the handling of their

_____
[1] Lori Waight is not a party to this appeal.

Citations and pin cites are based on the Westlaw online version of the cited material.

complaints to the superior court under RCW 28A.645.010. The court concluded, among other things, that Smith and Waight had failed to identify an appealable decision or order of the District within the 30-day appeal period and dismissed their appeal. Smith appeals. Because the decisions Smith challenges do not fall within the scope of RCW 29A.645.010, we affirm.

FACTS

The Kent School Board is responsible for adopting policies that provide guidance for administrative action and govern the conduct of the members of the District. In October 2018, following several years of financial hardship, the Board established the Fiscal Recovery Task Force (Task Force) to serve as advisors to the Board on fiscal matters.

The Task Force Action Plan adopted by the Board provides that "Task Force meetings are subject to State open meetings laws, including timely agenda posting and participation by the public." In response to inquiries regarding whether the Task Force's meetings would be open to the public, then-Board President Maya Vengadasalam explained that the first meeting would be open but the Task Force would decide for itself whether it would have open or closed meetings.

Following a disturbance at the Task Force's first meeting, Task Force members asked Vengadasalam to provide guidance regarding whether all meetings had to be open to the public. In response, Vengadasalam reiterated the Board's position that the Task Force was empowered to decide for itself whether the meetings were open. She further clarified

> The Board intended to open the Task Force meetings to the public
> where and when the Board was present, or when the Task Force

presented to the Board. The statement was not intended to direct how the Task Force should conduct its meetings. The Board will defer to the Task Force as to whether you will open the meetings to the public or allow record for your individual meetings.

Vengadasalam confirmed this decision in her public comments at the Board's regular meeting on March 13 and the Board formally amended the Task Force's Action Plan to reflect the Task Force's discretion on March 27.[2]

The Task Force held a second meeting on March 15, 2019, which it closed to the public. This meeting was not attended by a quorum of Board members. Smith and Waight were both denied admission to this meeting.

Upset at the Task Force's decision to exclude the public from the meeting, Smith began the complaint process identified and outlined in school policy 4312 and procedure 4312P, which govern complaints regarding employees. Policy 4312 states:

> Communication from the community regarding employees and/or programs is encouraged by the board. While the Board has confidence in its employees and programs and will act to protect employees from unwarranted criticism or disruptive interference, concerns raised by community members will be reviewed. The board or a board member will refer communication to the superintendent.
>
> The superintendent will establish procedures, 4312P, for handling community communication.

Procedure 4312P addresses the manner in which community complaints about employees and programs should be addressed by the District and states:

- Any complaints regarding a Kent School District employee should first be directed toward that person. Community members should

---

[2] As amended, the action plan states: "Task Force meetings are only subject to Washington State open public meeting laws, including timely agenda posting and participation by the public, where a quorum of the Board is convened and conducting business at that meeting." It further indicates that the Task Force "is not a decision-making body, and the Board will ultimately retain all decision-making authority."

be directed to that employee. Efforts should be made on the part of both parties to revolve any conflict.

- If the conflict is not resolved to the satisfaction of either party, then the complainant will complete a Concerns/Complaint Resolution Form (next page) and forward to the employee's supervisor. The supervisor will review the complaints with the employee. A formal inquiry will be conducted by the supervisor by interviewing the parties involved and make recommendations accordingly in an effort to resolve the complaint.

. . .

- Any unresolved issues can be brought to the attention of the Superintendent or designee.

Procedure 4312P provides a corresponding complaint resolution form.[3]

In accordance with procedure 4312P, Smith sought to resolve the complaint with the individual he believed was responsible for excluding him from the Task Force meeting, Israel Vela, the Chief School Operations & Academic Support Officer for the District. On March 18, he emailed Vela to complain about being denied admission and explained that he believed the Task Force meetings had to be open and that the denial of his entry violated the Open Public Meetings Act (OPMA).[4] He also demanded that Vela answer 16 related questions. That same day, Vela spoke with Smith on the telephone and agreed to provide a written response on behalf of the District.

Two days later, Vela emailed his response to Smith's complaint. In that email, Vela reiterated Vengadasalam's remarks regarding the Task Force's discretion to decide whether the meetings are open or closed and confirmed that

---

[3] Policy 4312 and procedure 4312P have subsequently been amended and renumbered as 4220 and 4220P, respectively.
[4] Ch. 42.30 RCW.

the March 15 meeting was not open to the public. He further explained that the "Fiscal Recovery Task Force participants met to discuss how future meetings would be conducted to include whether they would be open or closed. This meeting was not attended by more than one board member; therefore, there is no violation of the Open Public Meetings Act." Because Vela had not answered the 16 questions from the initial complaint, Smith told Vela that he did not think the issue was properly resolved. In response, Vela asserted that his email constituted the District's response to his complaint.

Smith did not file a lawsuit to allege a violation of the OPMA as allowed by RCW 42.30.120. Instead, on April 25, Smith submitted a 4312P complaint form to the District's Superintendent, Calvin Watts. In the complaint, Smith reported that, on Vela's order, he was "illegally prohibited from entering a public meeting of the Fiscal Recovery Task Force." He further complained that Vela had "refused to meet or respond to my 16 questions regarding his actions" and attached all of his previous correspondence with Vela.

On May 24, Watts emailed Smith to confirm his receipt of the complaint and to begin a formal inquiry. Because Watts felt the allegations were clear, he told Smith that an interview was not required and invited Smith to share any additional relevant documents. Smith disagreed and demanded an interview.

On June 24, having received no response from Watts, Smith submitted a complaint about Watts to the Board under policy 4312. In this complaint, Smith alleged that Watts had not complied with the 4312 complaint process with regard to the original complaint against Vela.

On July 18, Watts emailed Smith to arrange a meeting regarding the complaint. Watts clarified that the purpose of this meeting was for Watts to better ascertain the nature of Smith's complaint and not a forum for Smith to demand answers from the school board. Prior to this meeting, Smith emailed Watts a list of four proposed resolutions to his complaint, which included the District's adoption of new policies on timeliness; the Board's revision of the 4312 policy and procedure; publication of a written report of the events leading to the complaint, including comments by the aggrieved; and distribution of the Task Force's agendas and minutes.

Watts met with Smith on August 28, and Watts reported his conclusions and recommendations to Smith on September 23. Watts concluded that the March 15 Task Force meeting had not been open to the general public and that there had not been any inappropriate action by Vela. Finally, Watts offered to provide Smith ample notice of when the Task Force was scheduled to present its findings to the Board in order to resolve future issues. Smith disagreed with Watts' findings and objected to his failure to implement or address Smith's four proposed resolutions.

On October 11, Smith notified the Board that he did not believe his complaint had been resolved and reiterated his position that neither Vela nor Watts had complied with the 4312 policy and procedure. Smith also told the Board that Waight, who had also been denied entry to the March 15 meeting, was joining his complaint. Vengadasalam responded to the complaint on October 22, stating that the matter had been resolved during Watts' August 28 meeting with Smith.

Between October 30, 2019 and January 7, 2020, Smith sent five requests to the Board for "written documentation to support the closing of this matter." On January 14, the new Board President, Leslie Hamada, emailed the parties involved and indicated her intent to investigate Smith's complaint. She directed Watts to provide Smith with a further response on the issue.

On February 13, 2020, Watts sent Smith an email addressing all of his complaints related to the March 15, 2019 closed Task Force meeting. He explained that the Task Force was formed to act in an advisory committee and, because the Task Force had not acted on behalf of the governing body during that meeting, there had been no violation of the OPMA. Watts further noted that the Board had amended the Task Force Action Plan to correct an ambiguity as to this issue.

Smith continued to insist that his complaint had not been resolved and told the Board that he intended to appeal Watts' February 13, 2020 decision to the superior court if the Board did not act by March 11, 2020. On March 12, Hamada indicated that three Board members had agreed to review the complaint, and on April 22, the Board discussed the issue at a special meeting.

Following that meeting, the Board proposed ways in which the District could address Smith's concerns. The Board agreed to form a policy subcommittee to review the Board policies and agreed to meet with Waight to discuss her nearly identical complaint regarding the March 15, 2019 Task Force meeting, which the Board has previously concluded was resolved as duplicative of Smith's complaint.

Once again, Smith insisted that the Board had not resolved his complaint. He indicated that he would not consider the matter resolved until the Board adopted the four resolutions he had been demanding since August 2019. On May 15, Watts sent Waight a letter explaining how the District's obligations under policy 4312 and procedure 4312P had been satisfied.

On May 19, 2020, Smith and Waight filed this appeal in superior court pursuant to RCW 28A.645.010. Smith and Waight alleged that the District failed to comply with a number of its own policies, including the 4312 complaint policy and procedures. Principally, they contended they were inappropriately excluded from the Task Force's March 15 meeting and that the District did not appropriately address this grievance. They did not seek relief under the OPMA.

The court dismissed the appeal on April 2, 2021.

ANALYSIS

1. Appealability of District Decision to Reject Smith's OPMA Claim

Smith challenges the District's decision that the Task Force did not violate the OPMA by excluding him from its March 15, 2019 meeting. He also argues the District failed to resolve his complaints about the Task Force's exclusion in a manner consistent with the District's 4312 policy and procedure. But neither act by the District is subject to the appeal process of RCW 28A.645.010.

RCW 28A.645.010 provides a mechanism to seek judicial review of an "decision or order" of a school official or board. RCW 28A.645.010(1) provides:

Any person, or persons, either severally or collectively, aggrieved by any decision or order of any school official or board, within thirty days after the rendition of such decision or order, or of the failure to act upon the same when properly presented, may appeal the same to

the superior court of the county in which the school district or part thereof is situated . . .

Well-established case law defines what kinds of orders or decisions fall within the scope of this statute. An appealable "order or decision" is limited to a final decision made by "the board or official charged by statute, rule, or contract with the responsibility for making that decision." Mountain View Sch. v. Issaquah Sch. Dist. No. 411, 58 Wn. App. 630, 632, 794 P.2d 560 (1990) (defining "decision or order" under the identical predecessor statute). Thus, it is limited to decisions that the school official or board has authority to decide in the course of administering the school. Id. at 633.

A school district's decision to reject a community member's legal claim under the OPMA is not the type of decision that is appealable under RCW 28A.645.010 because the District does not have the authority to adjudicate such a claim. See Derrey v. Toppenish Sch. Dist. No. 202, 69 Wn. App. 610, 615, 849 P.2d 699 (1993) (school district's denial of negligent misrepresentation claim); State St. Office Bldg. v. Sedro Woolley School Dist. No. 101, 57 Wn. App. 657, 661, 789 P.2d 781 (1990) (determination of school district's authority to enter into a lease); Mountain View, 58 Wn. App. at 634 (school board's decision regarding trade name infringement).

First, Vela's and Watts' conclusions that the Task Force did not violate the OPMA by excluding Smith from the March 15, 2019 meeting are not subject to RCW 28A.645.010 because they reflect nothing more than the District's legal analysis of the OPMA requirements. A school district's determination of a legal claim such as whether excluding Smith from a Task Force meeting violated the

law, is not appealable under RCW 28A.645.010. Smith had a legal remedy under RCW 42.30.120, a remedy he apparently chose not to pursue.

Second, whether Vela or Watts followed the correct dispute resolution procedure in reviewing Smith's complaints is similarly not the type of "decision or order" that falls within the scope of RCW 28A.645.010. Policy 4312 encourages collaborative problem solving and, at the end of the process, a "recommendation" by a supervisor. A school official's "recommendation" for resolving a disgruntled community member's complaint is not an "order or decision;" it is just a suggestion.

Because the actions Smith challenges are not appealable under RCW 28A.645.010, the trial court did not err in dismissing his appeal.

2.      Task Force Decision to Exclude Smith

Although Smith frames this appeal as the District's failure to follow its own internal policies, the underlying thrust of Smith's appeal appears to be that the District could not allow the Task Force to conduct closed meetings and the District failed to take corrective steps after the Task Force violated the OPMA in excluding him from its March 15, 2019 meeting. We reject both contentions.

First, Smith's appeal of these actions was untimely under RCW 28A.645.010(1). Smith did not file his appeal until May 19, 2020, more than a year after the District granted permission to the Task Force to determine whether to conduct its meetings in public and months after the District told Smith the Task Force had not violated the OPMA in excluding him from the March 15, 2019 meeting. His petition fell well outside of the 30 day appeal period.

Second, Smith never sought relief under the OPMA nor is he entitled to such relief on the record before us. The OPMA provides, "All meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter." RCW 42.30.030.

A "governing body" includes "the multimember board, commission, committee, council, or other policy or rule-making body of a public agency, or any committee thereof when the committee acts on behalf of the governing body, conducts hearings or takes testimony or public comment." RCW 42.30.020(2) (emphasis added). The OPMA does not extend to advisory committees or "entities that do nothing more than conduct internal discussions and provide advice or information to the governing body." Citizens All. for Prop. Rights Legal Fund v. San Juan County., 184 Wn.2d 428, 442, 359 P.3d 753 (2015).

The Task Force did not violate RCW 42.30.030 because it was not a governing body. The Board established the Task Force to act only in an advisory capacity and "not in a decision-making role." The March 15 meeting was not covered by the OPMA.

And there are no allegations that that the Task Force acted on behalf of the Board at the March 15 closed meeting. Nor is there anything in the record to suggest that the Task Force conducted hearings or took testimony or public comment. Consistent with the Task Force's position as an advisory committee, it appears the Task Force only conducted internal discussions at the March 15 meeting.

Finally, in a related argument, Smith contends that the Board was obligated to follow the Task Force Action Plan it had adopted and that the closed meeting violated that plan. But the Task Force Action Plan adopted by the Board did not indicate that all Task Force meetings would be open to the public. Instead, it indicated that the Task Force was subject to OPMA, and, therefore, the meetings may be required to be open. Vengadasalam clarified that this was the Board's intent and the Board itself later amended the action plan to reflect it.

Smith is not entitled to any relief related to the District's decision to allow the Task Force to close the March 15, 2019 meeting or its decision that the Task Force did not violate the OPMA in excluding Smith from that meeting.

3.      Resolution of Smith's Complaint

Even if the manner in which Vela and Watts handled Smith's complaints constitute an appealable order or decision under RCW 28A.645.010, our review is limited to whether the District acted arbitrarily, capriciously, or contrary to any law. On this record, we conclude the District did not do so.

Because the action being appealed here is administrative,[5] our review under RCW 28A.645.010 is limited to whether the challenged decision was

---

[5] Smith contends that the action appealed here is quasi-judicial, entitling him to de novo review. This court applies four factors in determining whether administrative action is quasi-judicial, including whether (1) the court could have been charged with making the decision; (2) the action is one historically performed by courts; (3) the action involves the application of law to facts for the purpose of declaring or enforcing liability; and (4) the action is comparable to the ordinary business of courts as opposed to that administrators. Williams v. Seattle Sch. Dist. No. 1, 97 Wn.2d 215, 218, 643 P.2d 426 (1982). The factors demonstrate that the action challenged here is not quasi-judicial. Enforcement of policy 4312 and procedure 4312P is not comparable to the ordinary business of courts nor does it result in a declaration or enforcement of liability. Instead, it is an informal problem solving process that results in a mere recommendation. While the procedure calls for an investigation into the issue, it does not require the District to conduct hearings or mention the complaining party's right to legal representation. Thus, the action before us is administrative.

arbitrary, capricious, or contrary to law. <u>Haynes v. Seattle Sch. Dist. No. 1</u>, 111 Wn.2d 250, 253-54, 758 P.2d 7 (1988) (discussing the predecessor statute to RCW 28A.645.010); <u>see also</u> <u>Yaw v. Walla Walla Sch. Dist. 140</u>, 106 Wn.2d 408, 413, 722 P.2d 803 (1986) (concluding that, when an agency acts in its administrative function, superior court review is limited to whether the agency acted arbitrarily, capriciously, or contrary to law).

Arbitrary and capricious agency action is "willful and unreasoning action . . . without consideration and in disregard of the facts and circumstances of the case." <u>Porter v. Seattle Sch. Dist. No. 1</u>, 160 Wn. App. 872, 880, 248 P.3d 1111 (2011). "Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached." <u>Id.</u>

Smith argues the District's actions were improper because it failed to comply with its own policies and it failed to follow principles of fundamental fairness, due process, and reasonable timeliness. This argument is not supported by the record.

First, Vela and Watts complied with the complaint policy 4312 and procedure 4312P. Vela made an effort to resolve the issue directly with Smith by explaining the District's position with regard to the closed meeting. Watts reviewed the complaint with Smith and conducted an inquiry into Smith's allegations against Vela. Watts then made recommendations for resolving the complaint. That Watts did not address every demand Smith made does not mean Watts failed to follow policy 4312.

As for the Board's review of Watts' actions, the Board was not required to comply with policy 4312 because that policy is not applicable to complaints against the superintendent. Policy 4312 indicates that the Board will refer any complaints submitted under that policy to the superintendent, who, in turn, evaluates them in accordance with procedure 4312P. Nothing in the language suggests that this policy or procedure imposes any obligation on the Board to act.

Moreover, the timeliness of the District's action was not arbitrary or capricious. Neither policy 4312 nor procedure 4312P imposes a deadline or a timeframe for responding to and resolving complaints. And nothing in the record suggests that there was an unreasonable delay. The District addressed Smith's complaints; he simply did not like the outcome. The District's actions were not arbitrary or capricious and Smith is not entitled to relief.

4.      Noncompliance with Other District Policies

Finally, Smith argues the trial court erred in dismissing his claims that the Board failed to comply with a number of other policies and procedures. Because Smith does not have standing to challenge these actions, dismissal of these claims was appropriate.

First, Smith challenges the Board's failure to conduct a periodic review of its policies, its internal auditing functions, and its internal financial affairs. But Smith does not have standing to challenge the Board's failure to comply with District policies because Smith has not established that he is "aggrieved" by its actions.

RCW 28A.645.010 requires that a person be "aggrieved by" the school board's decision in order to commence an action. An aggrieved party is one whose personal rights or pecuniary interests have been affected. Briggs v. Seattle Sch. Dist. No. 1, 165 Wn. App. 286, 294, 266 P.3d 911 (2011). This does not include someone whose feelings have been hurt or someone who is disappointed over a certain result. State v. Taylor, 150 Wn.2d 599, 603, 80 P.3d 605 (2003) (defining "aggrieved party" under RAP 3.1).

The trial court here correctly concluded that Smith does not have standing to challenge the Board's failure to comply with its policies because he has not identified any personal or pecuniary interests at stake. Smith is not an employee of the District, nor does he appear to be a resident of the District, a taxpayer of the District's attendance area, or a parent of a child enrolled in a District school. He has not identified any relation to the school or otherwise argued that he has a personal or pecuniary interest in the District's compliance with the challenged policies and procedures.

Because he does not have standing to challenge the Board's policy decisions, the trial court did not err in dismissing these claims.

We affirm.

Andrus, A.C.J.

WE CONCUR:

- 15 -