## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/walareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, WASHINGTON STATE PERSONNEL RESOURCES BOARD, | No. 84009-6-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| JULIA A. BARNETT, M.D., | |
| Appellant. | |

DíAZ, J. — The Washington State Department of Corrections ("DOC") terminated Appellant, Julia Barnett, M.D., in April 2019 from her position as staff physician and medical director of the Monroe Correctional Complex ("MCC") for "incompetence." The Personnel Resources Board ("PRB") upheld the decision following a three-day hearing in October 2020. The appellant sought a Writ of Review and/or Writ of Certiorari (the "Writs") from the Snohomish County Superior Court in October 2021. That court declined to issue the Writs, finding that the PRB had acted neither illegally nor exceeded its authority and that there was another potential remedy at law available to Barnett. The superior court made such

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84009-6-I/2

findings without reviewing the entire administrative record, as the agencies had refused to produce it. Our Supreme Court denied direct review and transferred the appeal to this court in May.

In her appeal, Barnett asserts that the superior court erred by denying the Writs without demanding and reviewing the entire administrative record and without holding a hearing. Without such process, Barnett asserts that trial courts cannot determine whether the discharge and PRB's review exceeded its jurisdiction or otherwise was unlawful.

We affirm the superior court's denial of the Writs because, as preliminary matters, (1) the PRB was not exercising a "judicial function" that would subject it to a statutory writ of review by a superior court, and (2) the trial court did not abuse its significant discretion when finding that there were other legal options available to Barnett, which defeat the need for a constitutional writ. Further, there is no authority holding that a superior court must receive and review the entire record or hold a hearing before assessing the preliminary aspects of either writ. We do not reach the merits of the dispute or other issues the parties present.

I.     FACTS

Barnett was a staff physician and the facility medical director at the MCC, which is within the DOC, from March 2017 until her termination in April 2019. In

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84009-6-I/3

support of her termination, DOC conducted an investigation and produced a report, which concluded that Barnett:

> [F]ailed to exercise sound clinical judgement; provide adequate medical care to patients; advocate for patients; make timely and necessary arrangements for adequate medical care to be provided to patients outside of MCC; ensure that providers whom [Barnett] clinically supervised were providing timely, adequate medical care, evaluations or assessments; ensure that sufficient documentation and charting was occurring so that the patient's condition could be adequately monitored; and communicate significant changes in a patient's condition to other critical medical providers.

In short, in Barnett's words, she was discharged by DOC for "alleged incompetence." DOC claimed that these actions constituted misconduct and had violated the DOC's Health Plan, multiple DOC policies, and her stated job expectations, including her formal position description and performance development plan. The investigative report further detailed the resulting suffering and harm to six specific patients. DOC found just cause for termination.

Barnett appealed her termination to the PRB in May 2019, alleging multiple violations of her procedural and substantive rights. A three-day hearing was held in October 2020, during which the PRB received over 1,200 pages of exhibits and heard testimony from all witnesses offered by both parties. In September 2021, the PRB affirmed the termination decision in a written decision. Such a process is

3

No. 84009-6-I/4

contemplated by the State's Civil Service law, RCW 41.06.170(2), which states in pertinent part:

> Any employee who is . . . dismissed . . . shall have the right to appeal, either individually or through his or her authorized representative, not later than thirty days after the effective date of such action to the Washington personnel resources board. The employee shall be furnished with specified charges in writing when a . . . dismissal . . . action is taken. Such appeal shall be in writing.

On October 25, 2021, Barnett filed a Petition and Application for Writ of Review or for Constitutional Writ of Certiorari in Snohomish County Superior Court, naming both DOC and the PRB as respondents. The Petition alleged that the PRB committed five types of evidentiary, procedural, and legal errors, which both respondents contested. The superior court denied issuance of either a statutory or constitutional writ of review after its review of a substantial record, including four briefs and multiple declarations, totaling several hundred pages. The court found that the PRB did not act illegally or exceed its authority and that other remedies at law were available to Barnett, while expressing uncertainty about whether the PRB was exercising a judicial function. Barnett sought review by the Supreme Court. Review was denied, and the case transferred to this court in May 2022.

4

No. 84009-6-I/5

## II. ANALYSIS

### A. Statutory Writ of Review Under RCW 7.16.040

There are two classes of writs: (1) the constitutional or common law writ and (2) the statutory writ. Fed. Way Sch. Dist. No. 210 v. Vinson, 172 Wn.2d 756, 767, 261 P.3d 145 (2011). Barnett sought either.

As an example of the latter, RCW 7.16.040 provides that:

A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

In other words, to obtain a statutory writ of review, "the petitioner must show (1) that an inferior tribunal (2) exercising judicial functions (3) exceeded its jurisdiction or acted illegally, and (4) there is no adequate remedy at law." Wash. Pub. Emps. Ass'n v. Wash. Pers. Res. Bd., 91 Wn. App. 640, 646, 959 P.2d 143 (1998) (citing Raynes v. City of Leavenworth, 118 Wn.2d 237, 244, 821 P.2d 1204 (1992)). If any of these elements is absent, there is no basis for superior court review. Clark County PUD v. Wilkinson, et al., 139 Wn.2d 840, 845, 991 P.2d 1161 (2000) (citing Bridle Trails Cmty. Club v. City of Bellevue, 45 Wn. App. 248, 250, 724 P.2d 1110 (1986)).

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84009-6-I/6

Review of a superior court's decision denying a statutory writ of review is de novo. City of Seattle v. Holifield, 170 Wn.2d 230, 240, 240 P.3d 1162 (2010) (citing Commanda v. Cary, 143 Wn.2d 651, 654, 23 P.3d 1086 (2001)). A statutory writ is an extraordinary remedy granted by statute, which should be used "sparingly." Id. at 239-40 (internal quotations and citations omitted). "Although the writ [of review] may be convenient, no authority supports its use as a matter of expediency." Dep't of Lab. & Indus. v. Bd. of Indus. Ins. Appeals, 186 Wn. App. 240, 246–47, 347 P.3d 63 (2015) (internal quotations omitted) (citing Commanda, 143 Wn.2d at 656). Courts should be wary of "broaden[ing] the scope of the statutory writ so as to be generally available rather than to be an extraordinary remedy as consistently held." Id. at 247.

Barnett glides past the first two elements to argue that the superior court could not assess the third and fourth elements without the full administrative record. Specifically, she argues that without the record the court could "not make that threshold ruling on the legality or illegality of the Board's actions. Nor could it determine what subsequent litigation Dr. Barnett could still bring." For Barnett, the "sole issue on appeal" is the presence or absence of the record. That framing, whereby a court skips over the first two elements, simply is not the law.

6

No. 84009-6-I/7

There is no dispute that the PRB is a tribunal (thus satisfying the first element), but the respondents assert that, regardless of the record before it, the PRB is not exercising a judicial function. We agree.

To determine whether an agency was exercising judicial functions, courts weigh the following factors: (1) whether a court has been charged with making the agency's decision; (2) whether the decision is the type that courts historically have made; (3) whether the decision involved the application of law to fact; and (4) whether the decision resembled the ordinary business of courts as opposed to legislators or administrators. Wash. Pub. Emps. Ass'n, 91 Wn. App. at 646.

Our Supreme Court and this court have held on multiple occasions that the PRB's decision that DOC properly applied its policies and procedures in a dismissal review is not a "judicial function" under the above criteria. Namely, our Supreme Court held that "the function of the [PRB], *in hearing and determining appeals from employees who have been dismissed for cause by their employing agency* is nonjudicial in nature." State ex rel. Hood v. Pers. Bd., 82 Wn.2d 396, 401, 511 P.2d 52 (1973) (emphasis added), overruled on other grounds by Pierce County Sheriff v. Civ. Serv. Comm'n of Pierce County, 98 Wn.2d 690, 658 P.2d 648 (1983); Williams v. Seattle Sch. Dist. No. 1, 97 Wn.2d 215, 221, 643 P.2d 426 (1982). The court explained that:

> Prior to creation of the [PRB], state employees had no express employment rights which were within the power of the courts to

7

No. 84009-6-I/8

protect. Personnel administration was left exclusively to the discretion of management. Thus, there were no functions which the courts had or even could have performed prior to the creation of the [PRB].

Id.

The Supreme Court later further explained that, when an agency did not have to apply existing law to present facts to make its determination and when the hearing more closely resembled the business of administrators than that of courts, the actions are then not "functionally similar enough to court proceedings to warrant judicial review." Raynes, 118 Wn.2d at 244-45 (citation omitted). Indeed, since nearly the inception of the Civil Service Laws, the Supreme Court has recognized that "personnel policy and management . . . is essentially an administrative or executive function rather than a function historically or traditionally resting with the judicial branch of government." Gogerty v. Dep't of Insts., 71 Wn.2d 1, 5, 426 P.2d 476 (1967).

Similarly, this court in Jones v. Pers. Res. Bd., 134 Wn. App. 560, 572, 140 P.3d 636 (2006), held that the "nature of the issue in dispute ultimately controls in determining whether courts historically performed the function in question." (citing Wash. Pub. Emps. Ass'n, 91 Wn. App. at 649–50). And this Court further held that PRB's resolution of an employee's grievance about a performance evaluation – even in the context of an adversarial proceeding involving a collective bargaining

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

agreement – is not a judicial action precisely *because* it "was essentially a personnel matter." Id.

Finally, as a matter of efficiency, our Supreme Court explained that such decision-making is not a judicial function because the PRB in a disciplinary appeal is free to use its personnel expertise and its "power to modify, as well as to reverse or affirm the decision of the employing agency. Any other approach would result in an inflexibility inconsistent with the orderly, swift and just disposition of merit system appeals." Dunaway v. Dep't of Soc. & Health Servs., 90 Wn.2d 112, 115, 579 P.2d 362 (1978) (citations omitted).

Here, "the nature of the dispute" is nothing other than a personnel administration or management matter. In other words, the PRB was not in the business of applying laws to facts, but rather to assess the performance of DOC's employee by applying state and agency policies and procedures as guided by its internal rules to the facts: the Health Plan, DOC policy documents, and her individualized position description and performance development plan. In such circumstances, the courts of Washington should resist playing the role of a super personnel department.

Barnett relies in passing on this Court's holding in Wash. Pub. Emps. Ass'n, 91 Wn. App. at 649, that, in some narrow instances, the PRB does exercise a judicial function. However, in that case, the Washington Public Employees

No. 84009-6-I/10

Association ("WPEA") petitioned for statutory or constitutional writs, after the PRB dismissed WPEA's unfair labor practices complaint against the Office of Financial Management, which had negotiated and then disapproved state employee salaries, allegedly in violation of notice and other procedural requirements. Wash. Pub. Emps. Ass'n, 91 Wn. App. at 644-45. This court found that, in that context, the PRB was exercising a judicial function because courts had historically considered such petitions and the PRB hearing resembled the ordinary business of courts. Id. at 647-49. This court specifically distinguished the nature of that dispute from the personnel and policy management dispute in Hood. Id. at 649-50. Again, this case falls in the line of cases with Hood, which remains good law on this point.[1]

For these reasons, we do not reach any additional issue, including:

1. Whether the legislative directive or statutory scheme for appeals from adverse actions against public employees would entirely preclude any further process. Namely, pursuant to RCW 41.06.170(2), "Decisions of the Washington personnel resources board on appeals filed after June 30, 2005, *shall be final and not subject to further appeal.*" (emphasis added). Our Supreme Court has

---

[1] We also conclude that Barnett cannot establish that there is no adequate remedy at law, which showing is required for issuance of both a statutory writ and constitutional writ, which is discussed below in the analysis of the constitutional writ.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84009-6-I/11

confronted an analogous "conundrum," namely, "how to reconcile the legislature's grant of review by statutory writ, RCW 7.16.040, with the legislature's denial of" appeal rights in another statute, here the final sentence of RCW 41.06.170(2). Vinson, 172 Wn.2d at 768.  While the Supreme Court held that a statutory writ of review "is clearly not meant to be a substitute for an appeal and cannot be used to circumvent the legislature's clear directive," id., we need not resolve this inconsistency, if any, at this time on this record.  Indeed, neither party has fully briefed the issue.  State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

        2.      Whether the PRB exceeded its jurisdiction or acted illegally *on the merits*, which Barnett does not ask us to reach in any event.

        B.  Constitutional Writ of Certiorari

"A constitutional right to judicial review still exists notwithstanding [a litigant's] inability to appeal" or obtain a statutory writ.  Vinson, 172 Wn.2d at 768 (citing CONST. art. IV, § 6 & Williams v. Seattle Sch. Dist. No. 1, 97 Wn.2d 215, 643 P.2d 426 (1982)).  However, the constitutional writ of certiorari embodied in article IV, section 6 (amendment 87) of the Washington Constitution "will rarely be granted where [direct appeal or a statutory writ are] available but [have] not been utilized by the appellant and no good cause for the lack of such utilization is shown." Bridle Trails, 45 Wn. App. at 253.  Here, neither of those types of actions

11

No. 84009-6-I/12

is still available, so the question of whether a constitutional writ is appropriate is ripe.

The most "fundamental" purpose of such a writ is "to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority." Saldin Sec., Inc. v. Snohomish County, 134 Wn.2d 288, 292, 949 P.2d 370 (1998) (citing Bridle Trails, 45 Wn. App. at 252–53). Thus, a court will accept review only if the petitioner can allege facts that, if verified, would establish the lower tribunal's decision was "illegal or arbitrary and capricious." Saldin, 134 Wn.2d at 292 (citations omitted). However, crucially, this form of review lies "always" within the trial court's broad discretion. Bridle Trails, 45 Wn. App. at 252. As this Court explained in Bridle Trails:

> The grant of the common law writ . . . cannot be mandated by anyone, including a higher court such as this. Nor can the superior court ever lack the jurisdiction to entertain application for a writ alleging acts in excess of jurisdiction by an inferior body, whether exercising judicial functions or administrative ones. This jurisdiction is inherent in the court, as recognized in the constitution. The superior court may in its discretion refuse to exercise its inherent powers of review *so long as tenable reasons are given* to support that discretionary ruling.

Id. (emphasis added). Not even the Legislature may intrude by statute on this constitutional power. North Bend Stage Line, Inc. v. Dep't of Pub. Works, 170 Wash. 217, 227-28, 16 P.2d 206 (1932).

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84009-6-I/13

For these reasons, a superior court's decision denying a constitutional writ of certiorari is reviewed under an abuse of discretion standard. Newman v. Veterinary Bd. of Governors, 156 Wn. App. 132, 142, 231 P.3d 840 (2010) (citing Bridle Trails, 45 Wn. App. at 252). A court abuses its discretion only when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. Gildon v. Simon Prop. Grp., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006) (citations omitted).

Here, the trial court denied the application for a constitutional writ, finding that there is "another potential legal remedy available to the Petitioner which precludes the constitutional writ from issuing." Indeed, the "law is well established that discretion can be exercised when *no other adequate remedy at law* is available and when the decision below is arbitrary, capricious, or contrary to law." Torrance v. King County, 136 Wn.2d 783, 787-88, 966 P.2d 891 (1998) (emphasis added) (citations omitted). The respondents argue that "Barnett had an adequate alternative option to file a tort of wrongful discharge in violation of public policy" either before the appeal to the PRB or after. Br. of Resp't. DOC at 37 (citing *inter alia* Smith v. Bates Tech. Coll., 139 Wn.2d 793, 803, 991 P.2d 1135 (2000) & RCW 4.96.010(1)).

Although she again glides past these arguments and at times conflates the legal scheme governing statutory and constitutional writs, Barnett makes three

13

No. 84009-6-I/14

arguments in response. First, she claims that "any such suit . . . would be dead in the water," citing to principles of preclusion and collateral estoppel. To her credit, she later acknowledges that "[c]ollateral estoppel will be applied when the agency is acting in a judicial capacity," which we determined, for the reasons provided above, the PRB is not. Thus, this argument fails.

Second, even if not precluded by the PRB's decision, Barnett claims this remedy sounding in tort would be engulfed in the "tangled thicket" of bringing a wrongful discharge claim after administrative proceedings. That is, Barnett argues that the remedy would not be "sure and certain." However, that formulation is not the standard. The standard, as framed in the analogous statutory writ context, is whether there is "any plain, speedy and adequate remedy at law." RCW 7.16.040. And, "[a]lthough the writ [of review] may be convenient, no authority supports its use as a matter of expediency." Dep't of Lab. & Indus. v. Bd. of Indus. Ins. Appeals, 186 Wn. App. at 246–47. Barnett's hand-waving that such a lawsuit would be difficult is insufficient.

Third, Barnett argues that the proposed remedy is not adequate because it would only be brought against the DOC (the appointing and discharging authority) and not the PRB, which she apparently believes is the truly guilty party. This is a distinction without a difference: ultimately this is a personnel matter, whose crux is the validity of the adverse action DOC took, which the PRB merely blessed.

14

No. 84009-6-I/15

Barnett provides no authority holding that an employee should be able to "hold accountable" such a sub-agency. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 (2020) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962), review denied, 195 Wn.2d 1031, 468 P.3d 621 (2020)).

For these reasons, we find that the Superior Court did not abuse its discretion in denying a constitutional writ of review.

As with the statutory writ, then we do not reach whether there is a "threshold" or some kind of prima facie showing a petitioner must make on any of the elements of a constitutional writ enumerated above, as Respondents ask us to establish.

C. Administrative Record Prior to the Denial of Either Writ

Again, Barnett argues that Chapter 7.16 of the RCW requires the full administrative record be filed prior to the determination of a statutory writ. Barnett claims that "[t]he statutes are explicit that this is so." We find that this reading of RCW 7.16.040 is contrary to the plain language of the statute.

Pursuant to RCW 7.16.050, "The application must be made on affidavit by the party beneficially interested" and otherwise does not mandate any specific

15

No. 84009-6-I/16

process a court must take. "With the application for a writ, appellant must submit material in support of it specifically designating the jurisdictional excesses, abuses of discretion, or errors of law that substantially prejudiced appellant at the administrative hearing." Phillips v. City of Seattle, 51 Wn. App. 415, 422, 754 P.2d 116 (1988) (citing Concerned Olympia Residents for Env't v. City of Olympia, 33 Wn. App. 677, 683, 657 P.2d 790 (1983)), aff'd, 111 Wn.2d 903, 766 P.2d 1099 (1989). Typically, a party seeking a writ applies to the superior court by way of motion, sometimes ex parte.[2]

If the writ is granted, the respondent certifies to the court for review the records and proceedings. Specifically, beginning at 7.16.060, the statute describes what occurs *after* the court issues a statutory writ "to any other [body] having the custody of the record or proceedings to be certified." RCW 7.16.060. And, it is the writ itself that directs a party to "return the writ with the transcript required" and "to certify fully to the court issuing the writ, at a specified time and place, a transcript of the record and proceedings. . . ." for review by the court.

---

[2] RCW 7.16.050 grants discretion to the trial court to grant the writ without notice, or "grant an order to show cause why [the writ] should not be allowed." In typical practice, prior to issuance of the writ of review, the moving party first applies for an "order to show cause" setting a time and place for the responding party to appear before the court and present any arguments against granting the writ, such as: timeliness of the application, lack of jurisdiction, failure of service, or lack of standing. See, e.g., Crosby v. County of Spokane, 137 Wn.2d 296, 303, 971 P.2d 32 (1999); In re King County Hearing Exam'r, 135 Wn. App. 312, 317, 144 P.3d 345 (2006); Davidson v. Thomas, 55 Wn. App. 794, 795, 780 P.2d 910 (1989).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84009-6-I/17

RCW 7.16.060, .070. Only then does the court entertain "questions involving the merits." RCW 7.16.120; see, e.g., State ex rel. Melville v. Turner, 37 Wn.2d 171, 175, 222 P.2d 660 (1950). Nothing in the statute suggests that the superior court must obtain the full certified record before granting or denying a statutory writ.

What is more, there is no authority of any kind supporting the claim that a constitutional writ requires any such process. Based on the cases cited above and on this record, we do not accept the invitation to delineate a certain process.

Finally, the two cases Barnett adduces for the proposition that a full record is required before a statutory or constitutional writ is issued are inapposite. In re Dependency of B.W.K., No. 76675-9-I, slip op. (Wash. Ct. App. Oct. 29, 2018) (unpublished) https://www.courts.wa.gov/opinions/pdf/766759.pdf, is simply an example of an appellate court reviewing a trial record for error. The case has nothing to do with statutory or constitutional writs.

In Crouch v. Ross, 83 Wash. 73, 75, 145 P.87 (1914), our Supreme Court, over 100 years ago, affirmed the trial court's denial of a writ in an unusual situation; namely, where the court sought the underlying transcripts, which did not exist because the stenographer could not read her notes. The Court held that "it was not only within the *discretion* of the court, but was in a sense incumbent upon him, to dismiss the proceedings." Id. at 74 (emphasis added). There is no reference to Chapter 7.16 of the RCW, although a version of it existed. And, the opinion, if

17

No. 84009-6-I/18

anything, highlights, and bases the decision on, the significant discretion trial courts have in considering constitutional writs of review. We do not now impose additional requirements not mandated by any current authority.

III.    CONCLUSION

We affirm the denial of the requested statutory and constitutional writs for the reasons provided.

_Díaz, J._

WE CONCUR:

_Chung, J._                    _Mann, J._

18